Amy DAY, Claimant and Appellant,

v.

JOHN MORRELL & COMPANY,
Employer/Self–Insurer and
Appellee

and

United Parcel Service, Inc., Employer
and Appellee,

and

Liberty Mutual Insurance Co.,
Insurer and Appellee.

Nos. 17703, 17704.

Supreme Court of South Dakota.

Considered on Briefs April 20, 1992.

Decided Sept. 2, 1992.

Rehearing Denied Sept. 29, 1992.

Acie W. Matthews of Pruitt, Matthews, Muilenburg & Strange, Sioux Falls, for claimant and appellant.

Michael S. McKnight of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for appellee John Morrell & Co.

Susan Jansa Brunick of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for appellees United Parcel Service and Liberty Mut. Ins.

McMURCHIE, Circuit Judge.

Worker's compensation claimant Amy Day (Day) appeals the trial court judgment reversing the Department of Labor's (Department) order holding UPS and Mutual Liberty liable for Day's left and right carpal tunnel injuries. We affirm.

## FACTS

Day began working at John Morrell & Company (Morrell) on August 25, 1986, and continued there until October 14, 1986. As a utility worker, her duties included carrying and pushing loads of wieners weighing up to 50 pounds. On September 18, 1986, Day saw the company nurse complaining of numbness in the tips of her right thumb, index and middle fingers and left index and middle fingers. Day did not seek further medical treatment for these complaints while working at Morrell.

On August 5, 1987, Day went to the Central Plains Acute Care Clinic complaining of pain from her left shoulder to her wrist. On August 11, 1987, Day saw her family practice physician, Dr. Tam, complaining of left arm pain with some numbness in her hand. Day told Dr. Tam that she had similar problems while working at Morrell, but had gotten along well until recently when she began having problems again. Dr. Tam's impression was that Day was having some carpal type symptoms of the extremity and he suggested she undergo a nerve conduction study.

Carpal tunnel involves a compromise of the median nerve which produces pain and numbness in the thumb, index and middle fingers and part of the ring finger. A nerve conduction study is the main test used for detecting carpal tunnel syndrome. On August 28, 1987, a nerve conduction study was done. The nerve conduction test was negative for irritation of the median nerve. It was normal for the ulnar nerve. The ulnar nerve supplies sensation to the remaining portion of the ring finger and pinkie. These two nerves, median and ulnar, are separate, distinct and totally unrelated sources of possible injury.

In January 1988, Day began working as a clerk for UPS and worked until April 5, 1988. On April 4, 1988, she bumped her left elbow (crazy bone) on a tape dispenser while weighing a package. Day reported a pain in her left hand and that her ring finger and pinkie remained numb overnight. UPS referred Day to the Central Plains Clinic where she saw a physician's assistant on April 6, 1988. His preliminary diagnosis was possible early carpal tunnel.

On April 11, 1988, Day saw Dr. Tam and again complained of carpal tunnel symptoms and some numbness in the ring finger and pinkie. Dr. Tam recommended that Day repeat the nerve conduction study and get an orthopedic consultation. This second nerve conduction study was normal for the median nerve, but positive for the ulnar nerve. Day was referred to Dr. Carlson for an orthopedic consultation.

On April 18, 1988, two weeks after the elbow injury, Day returned to see Dr. Tam. At this time, the left hand carpal tunnel symptoms that Day complained of on April 6 and 11 had totally resolved. Dr. Tam provided no further treatment to Day for any carpal tunnel symptoms. On July 11, 1988, Dr. Jorge Johnson performed surgery on Day for compression of her ulnar nerve.

A third nerve conduction study was done on February 22, 1989. This test showed improvement in the ulnar nerve and the median nerve tested normal again.

In April of 1989, Day sought a second opinion from Dr. Cho as to her ulnar nerve problem. At this time, she underwent yet another nerve conduction study. For the first time Day had a positive reading regarding her median nerve. She was referred to Dr. VanDemark.

On May 18, 1989, Dr. VanDemark saw Day and diagnosed her as having left carpal tunnel syndrome. Day told Dr. VanDemark that this carpal tunnel developed in 1986 while working at Morrell. No reference was made to Day's work at UPS. On June 13, 1989, Day underwent surgery for left carpal tunnel release. Dr. VanDemark continued treating Day for pain in both the ulnar and median nerves.

On December 4, 1989, Dr. VanDemark examined Day and found that she had pain and numbness in her right hand. He continued treating her periodically for these right carpal tunnel symptoms. On September 7, 1990, Day had surgery for right carpal tunnel release.

Day sought worker's compensation benefits as a result of the carpal tunnel symptoms which she claims occurred during the course of her employment and which primarily manifested themselves while she was working for UPS, or shortly after she left UPS. UPS and its insurer, Liberty Mutual, did not contest that Day sustained a work-related ulnar nerve injury in April 1988. Day was paid temporary total and permanent partial disability benefits as well as all medical bills associated with the ulnar nerve injury.

## PROCEDURAL HISTORY

On June 16, 1989, Day filed a petition for hearing with the Department seeking worker's compensation benefits from UPS and Liberty Mutual and from Morrell for left carpal tunnel syndrome. On July 14, 1989, Day filed an amended petition for hearing adding a claim for rehabilitation benefits. On August 18, 1989, Day filed a second amended petition for hearing adding a claim for additional permanent partial disability benefits from UPS and Liberty Mutual resulting from an unrelated injury to her ulnar nerve. On July 16, 1990, Day filed a third amended petition for hearing adding a claim for alleged right carpal tunnel syndrome against all parties.

At a hearing on October 2, 1990, Day testified personally while Dr. Tam and Dr. VanDemark's testimony was by deposition. In its decision, the Department found that Day had sustained a gradually developing injury and held UPS and Liberty Mutual liable on the basis that Day's employment with UPS was the last employment where Day was injuriously exposed. The Department also found that Day had provided proper notice to UPS and Liberty Mutual of her claim for benefits for bilateral carpal tunnel syndrome. The Department further

determined that Morrell was not liable for Day's left or right carpal tunnel syndrome and dismissed Day's claims against them with prejudice.

On March 6, 1991, UPS and Liberty Mutual filed their notice of appeal to the Sixth Judicial Circuit. Their statement of issues on appeal was filed March 15, 1991. Neither Day nor Morrell filed a notice of appeal to the circuit court.

On August 7, 1991, the circuit court appeal was heard and an oral decision entered reversing, in part, and affirming, in part, the Department's order. The court:

1. Reversed the Department's order holding UPS and Liberty Mutual liable for Day's left and right carpal tunnel injuries because there was insufficient record evidence to support this conclusion.

2. Reversed the Department's conclusion that Day had provided proper notice to UPS and Liberty Mutual of her alleged right carpal tunnel injuries.

3. Affirmed the Department's decision that Day had provided proper notice to UPS of the left carpal tunnel.

4. Held that Day's failure to file a notice of review concerning the Department's decision regarding Morrell's non-liability rendered the Department's decision on res judicata.

On August 22, 1991, Day filed an application for remand contending she should be given an opportunity to introduce adequate medical testimony to support the award for carpal tunnel and to introduce adequate evidence that her disability was caused by a condition that developed gradually, was progressive in nature and was caused by her work activity at UPS.

On August 28, 1991, the circuit court denied the application for remand for two reasons. First, it was not timely. Day's request was made after the court made its decision. An application for remand must be made before the matter is considered by the circuit court. *See*, SDCL 1–26–34; *Vilhauer v. Dixie Bake Shop*, 453 N.W.2d 842 (S.D.1990). Second, a claimant should introduce all of its evidence before the agency. Day did not give any reason why she did not present the proper evidence before the Department. Day was aware of the applicable law and failed to introduce the facts necessary to show entitlement to compensation.

Day filed a notice of appeal with this court on October 9, 1991. UPS and Liberty Mutual filed a notice of review on October 11, 1991.

## STANDARD OF REVIEW

■■■■ SDCL 1–26–37 controls this court's scope of review from decisions of administrative agencies. SDCL 1–26–37 provides:

> An aggrieved party or the agency may obtain a review of any final judgment of the circuit court under this chapter by appeal to the Supreme Court. The appeal shall be taken as in other civil cases. The Supreme Court shall give the same deference to the findings of fact, conclusions of law and final judgment of the circuit court as it does to other appeals from the circuit court. Such appeal may not be considered de novo.

The standard of review of administrative decisions in South Dakota is firmly established. This Court will overrule an agency's findings of fact only when they are clearly erroneous. *Lien v. Miracle Span Corp.*, 456 N.W.2d 563 (S.D.1990). The test is whether after reviewing all the evidence we are left with a definite and firm conviction that a mistake has been made. *Id.* *Dakota Harvestore v. S.D. Dept. of Revenue*, 331 N.W.2d 828 (S.D.1983). However, conclusions of law are given no deference by this Court on appeal and are freely reviewable. *Huck v. McCain Foods*, 479 N.W.2d 167 (S.D.1991); *Tiensvold v. Universal Transport, Inc.*, 464 N.W.2d 820 (S.D.1991). When reviewing evidence presented by deposition, we do not apply the clearly erroneous rule but review that testimony as though presented here for the first time. *Lien supra; Application of Northwestern Bell Tel. Co.*, 382 N.W.2d 413 (S.D.1986). The question is not whether there is substantial evidence contrary to the agency finding, but whether there is substantial evidence to support the agency

finding. *Lawler v. Windmill Restaurant,* 435 N.W.2d 708 (S.D.1989).

## DECISION

■ Day did not challenge the Department's ruling that Morrell was not liable for her bilateral carpal tunnel injuries. Consequently Day waived this issue through her failure to comply with the notice of review requirements of SDCL 1–26–36.1 and her failure to brief the issue. *See, Application of Trade Development Bank,* 382 N.W.2d 47 (S.D.1986) (standing issue not preserved for appeal because the record does not contain a notice of review); *Matter of Midwest Motor Exp., Inc., Bismarck,* 431 N.W.2d 160 (S.D.1988) (issue was not properly preserved and had been waived because of a failure to comply with SDCL 1–26–36.1 at the circuit court level and SDCL 15–26A–22 at the Supreme Court level); *Littler v. South Dakota Dept. of Labor,* 426 N.W.2d 314 (S.D.1988) (Department's failure to file a brief … an abandonment of its position). Thus, the Department's ruling is final and res judicata as to Morrell.

This Court must determine whether there is substantial evidence to support the Department's determination that Day's work at UPS contributed independently to her left and right carpal tunnel syndrome. To support this finding, the evidence must show that Day sustained an additional injury, or the aggravation of a pre-existing injury, during her employment with UPS.

■ In a worker's compensation case, the claimant has the burden of proving all the facts essential to compensation. *King v. Johnson Bros. Construction Company,* 83 S.D. 69, 155 N.W.2d 183 (1967); *Mehlum v. Nunda Cooperative Assn.,* 74 S.D. 545, 56 N.W.2d 282 (1952). Day bore the burden of proving all facts necessary to an award of compensation including establishing that the injury arose out of and in the course of employment or that the injury was aggravated by her work with UPS.

■ To recover disability benefits under the workmen's compensation statutes, the claimant has the burden of establishing a "causal connection between the employment and the disability." *Lawler,* 435 N.W.2d at 710. The testimony of professionals is crucial in establishing this causal relationship because the field is one in which laymen ordinarily are unqualified to express an opinion. *Lawler, supra; Wold v. Meilman Food Industries,* 269 N.W.2d 112 (S.D.1978). Unless its nature and effect are plainly apparent, an injury is a subjective condition requiring an expert opinion to establish a causal relationship between the incident and the injury or disability. *Miner v. Robertson Home Furnishing,* 239 Neb. 525, 476 N.W.2d 854 (1991); *Mendoza v. Omaha Meat Processors,* 225 Neb. 771, 408 N.W.2d 280 (1987). "A [worker's] compensation award cannot be based on possibilities or probabilities, but must be based on sufficient evidence that the claimant incurred a disability arising out of and in the course of his employment. *Wold,* 269 N.W.2d at 116; *Rose v. John Deere Ottumwa Works,* 247 Iowa 900, 76 N.W.2d 756 (1956). Medical testimony to the effect that it is possible that a given injury caused a subsequent disability is insufficient, standing alone, to establish the causal relation under worker's compensation statutes. *Wold,* 269 N.W.2d at 116. *See also, Thomas v. St. Mary's Roman Catholic Church,* 283 N.W.2d 254, 258 (S.D.1979) (medical experts are qualified to express their opinions based upon medical certainty or medical probability, but not upon possibility)."

Day did suffer an injury to her ulnar nerve when she bumped her elbow while working at UPS. UPS and Liberty Mutual do not contest that and Day was compensated for the ulnar nerve injury. However, Dr. Tam testified that two weeks after that specific injury, Day's carpal tunnel symptoms had totally resolved and that after April 18, 1988, he provided no further treatment to Day for carpal tunnel symptoms. There is no medical evidence that provides the necessary causal connection between Day's work at UPS and a separate injury resulting in carpal tunnel syndrome. Day failed to show her carpal tunnel injury arose solely out of and in the course of her employment with UPS. In order to hold

UPS and Liberty Mutual responsible for Day's carpal tunnel, the evidence must show that an aggravation of her condition occurred while she was employed at UPS.

In successive injury cases, South Dakota has adopted the "last injurious exposure rule." *Novak v. C.J. Grossenburg & Son,* 89 S.D. 308, 232 N.W.2d 463 (1975). Under this rule, full liability is placed upon the employer/insurer covering the risk at the time of the most recent injury that bears a causal connection to the ultimate disability. *Id.; Lien,* at 566. If the second episode of symptoms is a mere recurrence of the first, the original employer/insurer remains on the risk. If there is an aggravation that contributes independently to the final disability, liability is then shifted to the subsequent employer/insurer. 4 Larson, *Workmen's Compensation Law,* § 95.20 (1990). Professor Larson states that where there is a persistence of symptoms along with no specific incident that can independently explain a second onset of symptoms, these facts present a ground for finding a recurrence. 4 Larson, *Workmen's Compensation Law,* § 95.27 (1990).

The record is totally lacking in any evidence that Day's work with UPS contributed or contributed independently to her final disability. Day herself testified that the carpal tunnel symptoms she experienced while working for UPS were the same as those she had experienced in 1986 and 1987. Dr. Tam testified that the symptoms were totally resolved by April 18, 1988, and that he provided no further treatment for them. Three nerve conduction studies were negative for median nerve involvement including the test shortly after the elbow injury at UPS.

The only evidence on the issues of causation and aggravation came from Dr. VanDemark's deposition testimony. Dr. VanDemark did not see Day until over one year after she had left employment with UPS and he did not know what her duties with UPS entailed. He did not review Dr. Tam's medical records from either 1986 or 1987. He was not aware of three prior negative nerve conduction studies. Dr.

VanDemark was also unaware that Day's carpal tunnel symptoms totally resolved themselves within two weeks from the time of the elbow injury at UPS. Dr. VanDemark acknowledged that in reaching his conclusions as to causation, he was relying exclusively upon the subjective history Day provided.

Nowhere in Dr. VanDemark's deposition did he give his opinion that the work at UPS contributed independently to Day's final disability. Dr. VanDemark's testimony on the question of aggravation is unclear and inconsistent. In response to a question from Day's attorney, Dr. VanDemark stated that Day's carpal tunnel problems originated or arose out of her work with Morrell and her ulnar nerve problem from her work at UPS. UPS is not referred to in respect as to the carpal tunnel injuries. When asked by Morrell's attorney, Dr. VanDemark stated that the carpal tunnel syndrome was aggravated by her work with UPS. In response to questions from counsel for UPS and Liberty Mutual, Dr. VanDemark stated: "I'm not sure if recurrence or flare up would be the right way to say it. I don't know for sure, but I think it would be more of an aggravation."

Dr. VanDemark's "I think ..." does not provide substantial evidence to support the Department's conclusion that under the last injurious exposure rule UPS is liable for the carpal tunnel injuries. There is no medical evidence to show any causal connection between Day's work at UPS and her right carpal tunnel syndrome. As for the left carpal tunnel syndrome, Dr. VanDemark never testified that the work at UPS independently contributed to the final disability. He never testified to a reasonable degree of medical probability that the work at UPS contributed to the disability. Furthermore, the evidence indicates that the left carpal tunnel symptoms had totally resolved within a week or so of the injury.

There is no evidence of record to support the Department's determination that the work at UPS contributed or contributed independently to Day's ultimate disability. UPS and Liberty Mutual cannot be held

liable for Day's left or right carpal tunnel. We affirm the circuit court in reversing the Department's decision holding UPS and Liberty Mutual liable for Day's carpal tunnel syndrome.

MILLER, C.J., and HENDERSON, SABERS and AMUNDSON, JJ., concur.

McMURCHIE, Circuit Judge, for WUEST, J., disqualified.