William C. SCHUCK, Claimant
and Appellee,

v.

JOHN MORRELL & COMPANY,
Employer/Self Insurer and
Appellant.

No. 18721.

Supreme Court of South Dakota.

Considered on Briefs on Nov. 29, 1994.

Decided March 8, 1995.

Reed Rasmussen of Siegel, Barnett & Schutz, Aberdeen, for claimant/appellee.

David J. Vickers of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for employer/self insurer and appellant.

McKEEVER, Circuit Judge.

William C. Schuck (Schuck) filed a petition with the Department of Labor (Department) seeking worker's compensation benefits for injuries incurred while employed at John Morrell & Co. (Morrell). The Department dismissed Schuck's petition concluding that he failed to prove causation and failed to give the required notice of injury. The circuit court reversed the Department's decision on both the causation and notice issues and remanded the case for a determination of compensation benefits. We affirm.

### Facts and Procedural History

Schuck worked for Morrell at its Aberdeen plant for twenty-one years from 1967 to 1988. He primarily worked as a route delivery person which required him to do heavy lifting on a daily basis. The lifting involved loading and unloading boxed beef and beef quarters, which weighed between 125 and 200 pounds, onto trucks. Schuck had no back problems prior to working at Morrell, but experienced back pain shortly after he began work there. He also experienced pain and numbness in his hands while at Morrell. Schuck's back and hand problems continued throughout the course of his Morrell employment and after he left their employ.

Although Schuck did not recall a specific incident which caused his back pain, he did recall several incidents at Morrell where he was injured and received medical care. One occurred in the late 1960's or 1970's where he slipped and fell. Schuck received some shots from a Dr. McGee. Another incident occurred when Schuck was pinned between a hoister. He was seen by a doctor in Fargo for some tests. Another occurred in 1988 when Shuck slipped and fell while delivering

meat to Kessler's and injured his chest and ribs. Finally, Schuck recalled a slip and fall in 1988 when he was readying the Morrell plant for closure.

With respect to each incident Morrell paid Schuck's medical expenses. Morrell never filed a worker's compensation claim in regard to those incidents except for the 1988 incident at Kessler's. Although Schuck was never gone from work for seven consecutive days due to injuries he did miss work on occasion, however, and took those days as sick leave.

Morrell employees reported job injuries to George Casanova, the Aberdeen plant Comptroller. Casanova testified that back injuries were common at Morrell. He acknowledged that Schuck reported problems with his back and hands on more than one occasion. However, there were no specific dates because Morrell's employee injury reports were lost when the Aberdeen plant closed. Schuck's medical records referred to back and hand pain during his Morrell employment. Dr. Gerber diagnosed Schuck with "possible carpal tunnel syndrome" in 1980. An x-ray taken in 1982 revealed that Schuck had spur formations on his lumbosacral spine. Spinal x-rays taken in 1990 also revealed additional spurring and a compression fracture of Schuck's spine.

The Aberdeen Morrell plant closed in October 1988, and Schuck started work for Midwest Pump & Tank. Some of his duties there required him to repair small pumps. He related that he suffered from continuous back pain and numb hands while working there. Schuck then worked for Wilbert Vault where he was required to deliver burial vaults and lift sixty to one hundred pounds.

In 1989 Schuck was involved in a non-work related slip and fall and consulted a doctor for back pain. Schuck next consulted Dr. Vidoloff in April 1990 for his back and hand pain which had not subsided since he left Morrell. Dr. Vidoloff diagnosed Schuck with carpal tunnel syndrome and placed a twenty-five pound lifting restriction on Schuck. Dr. Janusz also saw Schuck for back and hand problems in October, 1990. Dr. Janusz performed carpal tunnel surgery on Schuck's right wrist in December, 1990. In February 1992, Dr. Vidoloff gave Schuck a 12% permanent impairment due to his back and arm/wrist injuries.

Due to continued back pain and carpal tunnel problems Schuck filed a claim for workmen's compensation benefits on August 15, 1990. Morrell denied his claim on September 24, 1990 and Schuck filed a petition for disability benefits in April 1991. A hearing was held before the Department on November 19, 1992. The Department denied Schuck's petition. The Department ruled that Schuck failed to establish a causal connection between his employment at Morrell's and his back and carpal tunnel condition. It also ruled that Schuck failed to give timely notice of his injury to Morrell.

### Standard of Review

This Court makes the same review of the agency's action as the circuit court in an administrative appeal. *Lee v. South Dakota Dept. of Health*, 411 N.W.2d 108 (S.D.1987). Our standard of review is well established. We will overrule an agency's factual determinations only if we find them to be "clearly erroneous" in light of the entire evidence. *Petersen v. Hinky Dinky*, 515 N.W.2d 226, 231 (S.D.1994). We will not overturn the Department's finding unless we are left with a definite and firm conviction that a mistake has been made. *Id.* The question is not whether there is substantial evidence contrary to the Department's finding, but whether there is substantial evidence to support the finding of the Department. *Id.* (citations omitted). However, conclusions of law are fully reviewable. *Permann v. Department of Labor, Unemp. Ins. D.*, 411 N.W.2d 113, 116 (S.D.1987). Likewise, mixed questions of fact and law which require the application of a legal standard are fully reviewable. *Egemo v. Flores*, 470 N.W.2d 817, 820 (S.D.1991); *Permann*, 411 N.W.2d at 119.

### WHETHER SCHUCK'S CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS?

■ Morrell raised the statute of limitations in response to Schuck's petition for hearing with the Department. The Department did not, however, address that issue in

its decision and ruled on other grounds.[1] Morrell, however, did not file a notice of review with the circuit court on the statute of limitations issue pursuant to SDCL 1–26–36.1. Consequently, the circuit court also did not address that issue in its decision.

An issue is not properly preserved for appeal when a party fails to file a notice of review with either the circuit court (pursuant to SDCL 1–26–36.1) or the Supreme Court (pursuant to SDCL 15–26A–22) and, therefore, the issue is waived. *Matter of Midwest Motor Exp., Inc., Bismarck*, 431 N.W.2d 160, 162 (S.D.1988); *Day v. John Morrell & Co.*, 490 N.W.2d 720, 724 (S.D.1992) (issue of Morrell's liability waived for failure to file notice of review).

Morrell asserts, however, that it need not have filed a notice of review pursuant to SDCL 1–26–36.1 since the Department's decision was not adverse to it. Morrell argues the Department's ruling was not adverse because it did not rule on the statute of limitations. However, here, just like in *Midwest, supra*, the fact that the agency's ruling was not adverse does not except a party from complying with the notice of review.

In *Midwest*, the PUC ruled in favor Midwest Motor Express (MME) and the intervenor, Rude, appealed. MME argued that Rude lacked standing to appeal because of its failure to object to the findings and conclusions entered by the PUC. The circuit court heard the appeal despite the standing arguments of MME and affirmed the agency's decision. We held that MME failed to preserve the standing issue for appeal, although it had merit, due to its failure to file notice of review. Even though the PUC did not rule on the standing issue it was waived when MME failed to file a notice of review. *Midwest*, 431 N.W.2d at 162.

Therefore, because Morrell failed to file a notice of review on the statute of limitations issue it is waived for purposes of this appeal.

## WHETHER SCHUCK COMPLIED WITH THE NOTICE REQUIREMENT OF SDCL 62–7–10?

Morrell contended and the Department concluded that Schuck did not comply with the notice requirement of SDCL 62–7–10. The resolution of this issue is a mixed question of law and fact. Mixed questions of law and fact are where the historical facts are admitted or established, the rule of law undisputed, and the issue is whether the facts satisfy the statutory standard. *Permann*, 411 N.W.2d at 118 (citation omitted). When reviewing the agency's interpretation of the legal effect of the evidence we are presented with a mixed question of law and fact which is fully reviewable. *Fiegen v. North Star, Ltd.*, 467 N.W.2d 748, 750 (S.D.1991).

The notice requirement of SDCL 62–7–10 as it existed prior to 1994[2] provided in part:

Every injured employee ... shall immediately upon the occurrence of an injury ... give or cause to be given to the employer written notice of the injury ... unless it can be shown that the employer, his agent, or his representative had knowledge of the injury ... but no compensation shall be payable unless written notice is given within thirty days after the occurrence of the injury or death unless reasonable excuse is made to the satisfaction of the department for not giving such notice.

*Id.*

The intention of the Workmen's Compensation Act is that an employer be fairly apprised of an injury so that there may be an opportunity to investigate its cause and nature. *Streyle v. Steiner Corp.*, 345 N.W.2d 865, 867 (S.D.1984). The purpose behind the written notice requirement is to give the employer an opportunity for investigation of the accident and injury while the facts are accessible. *Schindler v. Manchester Biscuit Co.*, 71 S.D. 336, 24 N.W.2d 76 (1946). The requirement of notice of injury is designed to protect the employer by making sure he is alerted to the possibility of a claim so that a

---

1. Both parties fully briefed the issue to the Department. However, the Department did not address the issue in its decision nor make any findings or conclusions on the statute of limitations.

2. This statute was amended in 1994. 1994 S.D.Sess.L. ch. 396 § 12.

prompt investigation can be done. *Robinson v. Department of Transp.*, 296 N.W.2d 809, 811 (Ia.1980). The trend is to excuse lack of written notice whenever the employer acquired actual knowledge of the injury or accident, no matter how he acquired it. *Streyle*, 345 N.W.2d at 866. When the failure to give notice is at issue, the claimant has the burden of showing that for some good and sufficient reason notice could not be given or that the employer possessed knowledge of the injury's occurrence. *Schindler*, 24 N.W.2d at 77. Therefore, a claimant who satisfies either of the two exceptions to the written notice requirement has preserved a claim for compensation with regard to notice.

■ It is undisputed that Schuck did not give written notice of his injury to Morrell. He contended that Morrell through its agent, Casanova, had actual knowledge of his ongoing back and carpal tunnel difficulties. Schuck stated that he reported back problems to Casanova at least four or five times and hand and wrist problems throughout his employment at Morrell. Schuck specifically recalled reporting to Casanova about the treatment from Dr. McGee and the slip and fall incident in 1988.

Casanova acknowledged that Schuck had on several occasions reported back and hand problems. Casanova worked at the Aberdeen plant for thirty-six years, and served as the office comptroller for approximately twenty years. Morrell employees were to report injuries to him. Casanova indicated that it was Morrell and not the employee who made the decision of whether to report an injury as a worker's compensation claim. Morrell paid for most if not all of Schuck's medical expenses related to his back and hand problems and chose not to report them as worker's compensation claims. With regard to Schuck's hand problems, it is clear that Morrell had knowledge of his "possible carpal tunnel syndrome" in 1980.[3] Casanova further stated that the injury reports from the Aberdeen plant were apparently lost when the plant closed in 1988.

The circuit court found Casanova's testimony consistent with Schuck's and that Mor-

rell offered no evidence to contradict their testimony. Prior to April 1990, Morrell's knowledge of Schuck's back problems and carpal tunnel syndrome was as complete as Schuck's. It is clear that Morrell had knowledge of the possibility of a future claim by Schuck and could have investigated Schuck's complaints to mitigate a future disability claim had it chosen to do so.

In reaching this conclusion, we find the case of *Dillinger v. City of Sioux City*, 368 N.W.2d 176, 180 (Ia.1985) persuasive. There, the Iowa Supreme Court was faced with deciding whether the employee's act of giving notice of injury to the employer on the date of its occurrence binds the employer to the actual knowledge provision of Iowa's notice statute, but still permits the employee to avail himself of the "discovery rule" to avoid commencement of the limitations period. The *Dillinger* court, in finding that the employer had actual knowledge of the employees injury, though received two years prior to the date the claim was filed, reasoned:

> While the discovery rule aids the employee by preventing the limitation period from commencing until the claimant knows of his injury and its probable compensable nature, ... the notice requirement ... protects the employer by insuring he is alerted to the *possibility* of a claim so that an investigation can be made while the information is fresh.... Because the discovery rule is based upon entirely different purposes and reasoning than the notice requirement, the same set of facts may provide a different result under ... [the notice and limitations] sections.

*Id.* at 180 (emphasis added) (citations omitted).

Therefore, we conclude that the Department erred in determining that Schuck did not satisfy SDCL 62–7–10 by failing to give Morrell notice of his injuries. Schuck was excused from providing written notice due to Morrell's knowledge of his injuries and satisfied the notice statute.

---

**3.** Morrell paid the medical expenses related to this condition and their representative indicated to Schuck that carpal tunnel was a means for physicians to make money.

## WHETHER SCHUCK PROVED A CAUSAL CONNECTION BETWEEN HIS INJURIES AND MORRELL EMPLOYMENT?

■ A worker's compensation claimant has the burden of proving that there is a causal connection between his injury and his employment. *Caldwell v. John Morrell & Co.*, 489 N.W.2d 353, 357 (S.D.1992). The claimant must prove by a preponderance of the evidence that some employment incident or activity brought about the disability on which the worker's compensation claim is based; a possibility is insufficient and a probability is necessary. *Id.* at 358 (citing *Wold v. Meilman Food Industries*, 269 N.W.2d 112, 116 (S.D.1978)). The causation requirement does not mean that the claimant must prove that his employment was the proximate, direct or sole cause of his injury; rather, the claimant must show that his employment was a contributing factor to his injury. *Caldwell*, 489 N.W.2d at 358; *Sudrla v. Commercial Asphalt & Materials*, 465 N.W.2d 620, 621 (S.D.1991).

■ Schuck cannot relate a specific time or incident which caused his disability. He contended that his disability arose from the cumulative effect of twenty-one years of heavy lifting and repetitive type work at Morrell's. Although Schuck recalled specific incidents where he injured his back at Morrell, Schuck contended those specific incidents merely contributed to his current disability. Schuck stated that he had no history of back problems prior to working at Morrell, but that his back bothered him from the beginning and continued to be a problem throughout his Morrell employment.

The nature of Schuck's disability is similar to that claimed in *Caldwell, supra.* In *Caldwell*, the employee did not allege that his disability was the result of a particular identifiable event, but that it was the result of daily manual labor and the lifting and pulling of heavy objects. There we recognized that:

> [A]n employee does not have to have an accident or experience any trauma to his person before a medical condition will qualify as a compensable injury. It is sufficient that the disability was brought on by strain or overexertion incident to the employment, though the exertion or strain need not be unusual or other than that occurring in the normal course of employment.

*Caldwell,* 489 N.W.2d at 358 (citation omitted). In that respect the claimant need only show that the strain of his employment was a contributing factor to his medical condition. *Id.*

The record reflected that Schuck was involved in heavy lifting on a daily basis at Morrell and that slip and fall incidents were quite common. Casanova stated that practically every person who worked in the warehouse had injured their back from the heavy lifting involved.

Schuck stated that he was engaged in repetitive motion activities in cold conditions at Morrell. Dr. Vidoloff stated that carpal tunnel is a repetitive motion disease compounded by cold conditions.

Two medical doctors testified on Schuck's behalf and both had provided care and treatment to him. Dr. Vidoloff, a specialist in physical medicine and rehabilitation, opined to a reasonable degree of medical probability, based upon his examination of Schuck, his familiarity with Schuck's history and his own experience and training, that Schuck's disability arose out of his employment with Morrell. Dr. Janusz, who had been Schuck's family doctor since 1978, opined that Schuck suffered from degenerative back or joint disease, and that the back problems were related to the prolonged physical stress he experienced during his twenty-one years at Morrell. The Department rejected those opinions as lacking foundation. However, we find adequate foundation in that Dr. Vidoloff's medical background included muscle and nerve testing and Dr. Janusz performed Schuck's carpal tunnel surgery in December 1990.

We believe there was adequate foundation for the medical opinions and are convinced that the Department was clearly erroneous in determining that Schuck did not establish a causal connection between his Morrell employment and his injuries. There is no substantial evidence to support the Depart-

ment's findings on causation and we affirm the circuit court's conclusion.

### WHETHER LAST INJURIOUS EXPOSURE RULE RELIEVES MORRELL FROM LIABILITY?

Morrell contended that even if Schuck sustained a compensable injury while in their employ, they are not liable. Morrell argued that Schuck's non-work related slip and fall in February 1989, four months after Schuck left Morrell, was a new injury. In addition, Morrell argued that Schuck's lifting at Wilbert Vault and repetitive motion type work at Midwest Pump & Tank aggravated his back and carpal tunnel condition. Morrell contended that this "new" injury and the aggravation of Schuck's condition with subsequent employers relieved them of liability for Schuck's injuries under the "last injurious exposure rule."

 We have previously adopted the last injurious exposure rule in successive injury cases. Under that rule:

When a disability develops gradually, or when it comes as the result of a succession of accidents, the insurance carrier covering the risk at the time of the most recent injury or exposure bearing a causal relation to the disability is usually liable for the entire compensation.

*Novak v. C.J. Grossenburg and Son,* 89 S.D. 308, 232 N.W.2d 463, 464–65 (1975) (quoting 3 Larson, *Workmen's Compensation Law,* § 95.00; *Day, supra*). In successive injury cases, the original employer/insurer remains liable if the second injury is a mere recurrence of the first. If the second injury is an aggravation that contributes independently to the final disability then the subsequent employer/insurer is liable. *Day,* 490 N.W.2d at 725 (citing 4 Larson, *Workmen's Compensation Law,* § 95.20 (1990)). Where there is a persistence of symptoms along with no specific incident that can independently explain a second onset of symptoms, these facts present a ground for finding a recurrence. *Id.* (citing *Larson* at § 95.27). In order to find aggravation, it must be shown that the second episode contributed independently to the final disability. 4 Larson, *Workmen's Compensation Law,* § 95.22 (1994). Also, there must be a second injury as that term is used in the jurisdiction. *Id.*

Therefore, the determinative question in deciding whether Schuck's disability was a recurrence or aggravation, is whether his 1989 fall and subsequent work at Midwest Pump & Tank and Wilbert Vault independently contributed to Schuck's current disability.

Because an injury is a subjective condition, an expert opinion is required to establish a causal connection between the incident or injury and disability. *Day,* 490 N.W.2d at 724. Here, the only expert medical testimony, given by Dr. Vidoloff and Dr. Janusz, was that the Morrell employment caused Schuck's injuries.

 Absent from the record here is medical evidence that Schuck's 1989 non-work related slip and fall was a new injury. Dr. Vidoloff testified that the incident was not a new injury and that it was a continuation of back problems at Morrell.[4] Further, there is no credible medical opinion that Schuck's work at Midwest Pump or Wilbert Vault independently contributed to Schuck's disability. Although Dr. Vidoloff stated in response to questions by Morrell's counsel that subsequent repetitive type motion work would independently contribute to Schuck's carpal tunnel disability, he later admitted that he did not know how much, if any repetitive motion was involved in Schuck's work at Midwest. The only credible evidence concerning the type of work at Midwest came from Schuck. He testified that he was not engaged in repetitive motion type work at Midwest and that he only repaired three or four pumps a week. Schuck also testified that the pain and numbness experienced at Midwest was of the same type suffered at Morrell.

Finally, Dr. Vidoloff's opinion that Schuck's lifting of 200 pounds at Wilbert

---

4. Although Dr. Vidoloff, in response to questions by Morrell's counsel, stated that the 1989 fall independently contributed to Schuck's disability rating, the response was based on the assumption that the 1989 incident was a new injury. Dr. Vidoloff later testified that the 1989 incident would not have changed the disability rating he gave Schuck.

Vault independently contributed to his back disability is based on an erroneous assumption. Schuck never testified that he lifted that weight at Wilbert Vault. He testified that the maximum weight he lifted was between 60 and 100 pounds once or twice a day. The only reference to the 200 pounds was from Dr. Vidoloff's notes which he admitted could have been erroneously transcribed.[5] Moreover, the back problems Schuck experienced were persistent from the time he left Morrell until he made a claim for compensation.

We find that there is no credible medical evidence that Schuck's subsequent employment with Midwest Pump & Tank and Wilbert Vault or the 1989 slip and fall independently contributed to his disability. We find Schuck's testimony consistent with his assertion that the problems and symptoms with his back and hands after leaving Morrell were a continuation and recurrence of the problems he suffered while working at Morrell and not an aggravation or new injury. We also note that no medical expert had reviewed Schuck's disability or subsequent work on behalf of Morrell and expressed an opinion as to the cause of Schuck's injuries.

We affirm the circuit court in reversing the Department's decision that Schuck failed to prove causation and that he failed to give notice and remand back to the Department for a determination of compensation benefits.

MILLER, C.J., and SABERS, AMUNDSON and KONENKAMP, JJ., concur.

McKEEVER, Circuit Judge, for WUEST, Retired Justice, who was a member of the Court at the time this action was submitted and who had disqualified himself from participating therein.

---

5. Dr. Vidoloff's notes reflected that Schuck delivered bolts and worked for Englehoffer. The record clearly established that Schuck delivered vaults and he worked for Angerhofer.