1996 SD 69

Geneva M. WESTERGREN, Employee, Claimant and Appellant,

v.

BAPTIST HOSPITAL OF WINNER, Employer, Defendant and Appellee,

and

Wausau and Phico Insurance Companies, Its Insurers and Appellees.

Nos. 19341, 19348 and 19349.

Supreme Court of South Dakota.

Argued March 12, 1996.

Decided June 5, 1996.

Jean M. Massa of Jensen and Massa, Winner, for appellant.

Susan Jansa Brunick and Sandra K. Hoglund of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for appellee Hospital and Phico Ins. Co.

Daniel R. Fritz of Lynn, Jackson, Shultz & Lebrun, Sioux Falls, for appellee Wausau Ins.

GILBERTSON, Justice.

[¶ 1] Geneva Westergren, Claimant, appeals from a circuit court's order that her back condition was not caused by a workplace accident and that she failed to prove her carpal tunnel injury arose out of and in the course of her employment. We affirm in part and reverse in part and remand to the circuit court with instructions.

## FACTS AND PROCEDURE

[¶ 2] In April 1989, Geneva Westergren (Claimant) was hired by Baptist Hospital of Winner (Employer) as a part-time laundry aide. Claimant earned $3.75 per hour, which was raised to $3.95 per hour in January 1990. She worked approximately 24 hours per week gathering soiled linen and loading it into the hospital's washers and dryers, and pressing and folding the cleaned linen. Her duties also required her to lift five-gallon buckets of chemicals. During this same time period, Claimant was employed sporadically at a motel as a switchboard operator and one night per week at a cafe as a waitress.

[¶ 3] On May 27, 1989, Claimant slipped on some water which had leaked onto the floor from one of the hospital's washing machines. Claimant was able to catch herself and avoid a fall, but in doing so jerked her body. She treated with a chiropractor following this near-fall and continued working approximately twelve more months. Claimant scheduled her treatments twice weekly and later, once per week, so that she did not miss any work due to the injury. In October 1989, on the advice of her chiropractor, Claimant quit her waitressing job at the cafe.

[¶ 4] In January 1990, Claimant was seen by an orthopedic surgeon, Dr. Stout, at the request of Employer's insurer, Wausau Insurance Company. While being treated for her back injury, Claimant reported numbness in her right hand which led to her referral to a neurologist, Dr. Wiggs, and an eventual diagnosis in February 1990 of carpal tunnel syndrome. Dr. Stout performed surgery on Claimant for this condition in June 1990, but the surgery did not completely resolve the problem. Prior to the surgery, on advice of her local physician, Dr. Schramm, Claimant took a leave of absence from her job at the hospital which continues to this day.

[¶ 5] In October 1990, Claimant filed a claim for worker's compensation benefits. The Department of Labor held a hearing in which it found Claimant did not prove her carpal tunnel syndrome was caused by her employment. The Department further found that loss of employability and rehabilitation benefits were not warranted by Claimant's back condition. Claimant appealed the Department's decision to the circuit court. The circuit court affirmed the Department's finding regarding the carpal tunnel syndrome and further ruled that Claimant had failed to meet her burden of proof that her back condition was caused by her May 27, 1989 accident.

[¶ 6] Claimant appeals to this Court raising the following issues:

1) Whether the circuit court had jurisdiction to rule Claimant's back condition was not caused by a workplace accident when this issue was not argued before the Department of Labor and Wausau Insurance Company admitted Claimant's injury?

2) Whether the Department erred in holding the carpal tunnel syndrome did not arise out of and in the course of Claimant's employment?

3) Whether the Department erred in not reaching a temporary total disability issue for the carpal tunnel syndrome?

4) Whether Claimant is entitled to medical expenses for both the back injury and the carpal tunnel syndrome?

5) Claimant requests this Court require remand to the Department issues regarding rehabilitation and *Cozine* benefits for presentation of new evidence

regarding a change in Claimant's employability status.

By notice of review, Employer and Wausau Insurance Company raise the following issue:

1) Whether the circuit court erred in affirming the Department's finding that Westergren had met her burden of proving timely notice of carpal tunnel syndrome to her employer?

## STANDARDS OF REVIEW

 [¶ 7] Our standard of review from decisions of administrative agencies is governed by SDCL 1–26–37. This statute provides:

An aggrieved party or the agency may obtain a review of any final judgment of the circuit court under this chapter by appeal to the Supreme Court. The appeal shall be taken as in other civil cases. The Supreme Court shall give the same deference to the findings of fact, conclusions of law and final judgment of the circuit court as it does to other appeals from the circuit court. Such appeal may not be considered de novo.

However, when the issue is a question of law, the agency's actions are fully reviewable. *Caldwell v. John Morrell & Co.*, 489 N.W.2d 353, 357 (S.D.1992); *Egemo v. Flores*, 470 N.W.2d 817, 820 (S.D.1991). Further, we review findings based on deposition testimony and documentary evidence de novo. *Caldwell*, 489 N.W.2d at 357. As such, we "decide for ourselves the credibility of the deponents and the weight and value to be attached to their testimony." *Id.*

## ANALYSIS AND DECISION

[¶ 8] **1. Whether the circuit court had jurisdiction to rule Claimant's back condition was not caused by a workplace accident when this issue was not argued before the Department of Labor and Wausau Insurance Company admitted Claimant's injury?**

[¶ 9] In its answer to subparagraph two of Claimant's October 1990 Petition for Hearing for worker's compensation benefits, Wausau Insurance Company stated:

Denies the existence of any injury that arose out of and in the course of her employment with Baptist Hospital of Winner during the period the Employer was insured by this Insurer, *other than a slip and fall injury which occurred May 27, 1989, for which all benefits have been paid.* (emphasis added).

In its answer to subparagraph three of Claimant's December 1990 Amended Petition for Hearing for worker's compensation benefits, Employer and its insurer, Phico Insurance Company, stated:

Admits that the Employer was insured under the worker's compensation laws of the State of South Dakota with Phico Insurance Company on and after December 29, 1989. *Employer admits that on or about the 27th day of May, 1989 Claimant sustained an injury arising out of and in the course of her employment and, further asserts that worker's compensation benefits were paid by Employer's then insurer Wausau Insurance Company.* (emphasis added).

As such, whether Claimant's May 27, 1989 back injury was caused by her employment with Baptist Hospital was not argued before the Department of Labor. Causation was assumed by the Department. It made findings of fact and conclusions of law that Wausau was responsible for paying certain of Claimant's medical bills and travel expenses due to her back injury, as well as awarding compensation for disability. These findings and conclusions were reversed by the circuit court which found Claimant failed to meet her burden of proving that her back injury was caused or contributed to by her near-fall in Baptist Hospital's laundry room.

 [¶ 10] In a worker's compensation case, the claimant has the burden of proving all the facts essential to compensation. *Day v. John Morrell & Co.*, 490 N.W.2d 720, 724 (S.D.1992); *King v. Johnson Bros. Construction Co.*, 83 S.D. 69, 155 N.W.2d 183 (1967); *Mehlum v. Nunda Cooperative Ass'n.*, 74 S.D. 545, 56 N.W.2d 282 (1952). Whether the injury arose out of and in the course of the employment is a threshold question. *Aadland v. St. Luke's Midland Regional*

*Medical Center,* 537 N.W.2d 666, 669 (S.D. 1995).

[¶ 11] In *Kirnan v. Dakota Midland Hosp.,* 331 N.W.2d 72, 74 (S.D.1983), we stated "the relevant test of causation [is] whether the injury was one arising out of and in the course of the employment." (citing 1B Larson, Workmen's Compensation Law, § 38.30). "To be compensable, a claimant's injury must arise out of a risk inherent to employment. The words 'in the course of' refer to the time place and circumstances under which the accident took place...." *Aadland,* 537 N.W.2d at 669 (quoting *Roberts v. Stell,* 367 N.W.2d 198, 199 (S.D.1985)). "The phrase 'arising out of' expresses a factor of contribution. In other words, did the work contribute to causing the injury?" *Zacher v. Homestake Min. Co. of Cal.,* 514 N.W.2d 394, 395 (S.D.1994)(citing *Krier v. Dick's Linoleum Shop,* 78 S.D. 116, 119, 98 N.W.2d 486, 487 (1959)). *See also Guthmiller v. SD Dep't of Transp.,* 502 N.W.2d 586, 588 (SD 1993) ("injuries arising out of and in the course of employment are compensable")(citing SDCL 62–1–1(2)). By admitting that Claimant's May 27, 1989 injury arose out of and in the course of her employment, Employer admitted causation which Claimant would otherwise have been required to prove. *See Zacher,* 514 N.W.2d at 395 (back injury occurred at work but Claimant failed to prove his injury arose out of his employment).

[¶ 12] SDCL 15–6–36(b) provides in relevant part that "[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission...." Nothing in the record indicates such a motion or amendment was requested of the Department or the circuit court. As SDCL 1–26–32.1 provides that the rules under SDCL Ch. 15 governing practice and procedure in the circuit courts shall apply to administrative appeals unless specifically otherwise noted, we find this threshold issue to be admitted by Employer.

[¶ 13] Although application of these two statutes settles this issue, we note further that, at the Department's request, the parties delineated the issues to be presented at the hearing as follows:

By Claimant's attorney:

I believe that the employer still raises the issue of notice on the carpal tunnel injury, also whether that injury arose out of and in the course of employment. I also believe that the back injury, which occurred on May 27th of 1989, has been admitted, so the other question is the coverage, the remaining coverages to the back and the coverage to the carpal tunnel syndrome injury. I think that's it.

By attorney for Employer and Phico Insurance Company:

We would concur the claimant bears the burden of showing timely notice was provided, also that it arose out of and in the course of employment, for the carpal tunnel, as well as which insurer would be on the risk, should that be found to be compensable, is the issue, and the extent of benefits, if it should be so necessary to determine that issue.

By attorney for Employer and Wausau Insurance Company:

I believe they are covered, but I will restate them and make sure. I think that the issues involve the extent of temporary total disability, the extent of necessitative medical care and the extent of any permanent disability, and if any of those are owed, which insurer owes what benefit.

The record also reflects that payments had been previously made by Wausau Insurance Company for diagnostic visits and mileage expenses related to Claimant's back injury as well as for Claimant's weekly participation in a Wausau-approved lower-back rehabilitation program designed to improve Claimant's back strength.

[¶ 14] The circuit court concluded "Claimant has failed to meet her burden of proving that her back problems were caused or contributed to by her workplace slip on May 27, 1989." We determine this conclusion ignores the Employer's admission above, and as a matter of law, must be reversed. Though we find Claimant's back injury to be work related, as admitted by Employer, Claimant still has the burden of proving that

all of her injuries claimed were causally connected to her slip at work. *Day*, 490 N.W.2d at 724; *Caldwell*, 489 N.W.2d 353, 356 (S.D. 1992) (both injury and subsequent disability arose out of and in the course of claimant's employment); *see also Guthmiller*, 502 N.W.2d at 588 (holding claimant failed to prove his wrist injury which arose out of and in the course of his employment exacerbated his 50–year diabetic affliction, leaving him permanently and totally disabled).

[¶ 15] Although Claimant appealed the circuit court's ruling which we now reverse, Claimant did not directly challenge the Department's disability determination of her back injury. *See* our discussion under Issue Five, *infra*. Consequently, she waived this issue through failure to comply with notice of review requirements of SDCL 1–26–36.1 and her failure to brief the issue. Thus the Department's ruling is final. *See Day*, 490 N.W.2d at 724 and accompanying citations. We remand to the circuit court with instructions to reinstate the Department of Labor's Findings of Fact numbered 57 and 60 and Conclusions of Law numbered 21 and 23 which were reversed by the circuit court.[1]

**[¶ 16] 2. Whether the circuit court erred in affirming the Department's finding that Claimant had met her burden of proving timely notice of carpal tunnel syndrome to her employer?**

[¶ 17] This issue was raised by Employer and its insurers by notice of review and is a threshold issue which must be reached before we address Claimant's issues on appeal relating to the carpal tunnel injury. Notice to the employer of an injury is a condition precedent to compensation. *Schuck v. John Morrell & Co.*, 529 N.W.2d 894, 897–98 (S.D.1995).

[¶ 18] The law in effect when the injury occurred governs the rights of the parties. *Helms v. Lynn's, Inc.*, 542 N.W.2d 764, 766, 1996 SD 8, ¶ 11. At the time Claimant's carpal tunnel syndrome occurred, SDCL 62–7–10 [2] provided:

> Every injured employee or his representative shall immediately upon the occurrence of an injury or as soon thereafter as practicable give or cause to be given to the employer written notice of the injury and the employee shall not be entitled to a physician's fee nor to any compensation which may have accrued under the terms of this title prior to the giving of such notice, unless it can be shown that the employer, his agent, or representative had knowledge of the injury or death, or that the person required to give such notice had been prevented from doing so by reason of physical or mental incapacity or the fraud or deceit of some third person or other equally good reason; but no compensation shall be payable unless written notice is given within thirty days after the occurrence of the injury or death unless reasonable excuse is made to the satisfaction of the department for not giving such notice.

The purpose of the written notice requirement is to give the employer the opportunity to investigate the injury while the facts are accessible. *Schuck*, 529 N.W.2d at 897 (citing *Schindler v. Manchester Biscuit Co.*, 71 S.D. 336, 24 N.W.2d 76 (1946)). The notice requirement protects the employer by assuring he is alerted to the possibility of a claim so that a prompt investigation can be performed. *Id.*

[¶ 19] In *Streyle v. Steiner Corp.*, 345 N.W.2d 865, 866 (S.D.1984), we acknowledged the "current trend is to excuse lack of notice whenever the employer acquired actual knowledge of the injury or accident, no matter how he acquired it." (citing 3 Larson, The Law of Workmen's Compensation, § 78.31(a) (1982)). When failure to provide notice is an issue, claimant has the burden of

---

1. Our reinstatement of these numbered findings and conclusions makes Wausau Insurance Company responsible for "all those medical bills which were for the back condition, and for travel expenses necessitated by the same." Regarding Claimant's disability for her back injury, the Department held that Wausau has the option of compromising with Claimant between the ratings offered by Drs. Hoversten and Hata to compen-

sate her for loss of use, or obtaining its own independent medical examination.

2. This statute was completely rewritten in 1994 and now addresses those instances where the employer has acquired actual knowledge of the injury.

showing that for some good and sufficient reason notice could not be given or that the employer possessed knowledge of the injury's occurrence. A claimant who satisfies either of the two exceptions to the written notice requirement has preserved a claim for compensation with regard to notice. *Schuck*, 529 N.W.2d at 898 (citing *Schindler*, 24 N.W.2d at 77).

[¶ 20] Claimant was informed by Dr. Wiggs in February 1990 that her carpal tunnel syndrome was probably work related. The record reflects she did not relay this information to her employer until June 1, 1990 when she filed an injury report. However, Employer had been investigating, through letters of inquiry to both Drs. Stout and Wiggs, to determine the nature and extent of Claimant's injuries and whether there were any work restrictions due to the back injury Employer had already accepted as compensable. At the Department of Labor hearing, Mr. Houser, CEO of Baptist Hospital, provided the following testimony:

Q: So at least as of the February 22nd [1990] and perhaps a little before that when you had gotten this [Dr. Stout's] report, you realized that there was a problem with numbness in the upper extremity?

A: Yes, based on his report, yes I did. Again, not being a physician and having gone to a chiropractor before, I guess I assumed that it was because there was probably a pinched nerve in the back, so I was not too concerned about this at that time.

Q: But you were aware, weren't you, that Geneva had a back injury from slipping at the hospital?

A: Yes.

\* \* \* \* \* \*

Q: Now, you knew, I presume, from Dr. Stout's letter and from his notes, that he recommended that Geneva see a specialist for the numbness in her upper extremity; is that right?

A: Yes, I did.

\* \* \* \* \* \*

Q: Okay. *And so you were concerned at least that this numbness could have something to do with the hospital?*

A: *Again, yeah, I was assuming it was from the back.*

Q: The numbness?

A: Yes.

[¶ 21] Regardless of the ultimate diagnosis of Claimant's upper extremity numbness, Employer testified he believed it was related to Claimant's earlier work-related back injury. Clearly, Employer had sufficient actual knowledge that this condition may be work-related. We affirm.

[¶ 22] **3. Whether the Department erred in holding the carpal tunnel syndrome did not arise out of and in the course of Westergren's employment?**

[¶ 23] SDCL 62–1–1(7) defining "injury" under our workers' compensation statutes was amended in 1995 to require that the employment or employment-related activities be a major contributing cause of the employee's injury. However, Claimant's carpal tunnel syndrome gradually occurred in 1989 and the law in effect when the injury occurred governs the rights of the parties. *Helms*, 1996 SD 8, ¶ 11, 542 N.W.2d at 766. In 1989, "injury" under our worker's compensation statutes was defined as "only injury arising out of and in the course of the employment, and shall not include a disease in any form except as it shall result from the injury[.]" SDCL 62–1–1(2). We have previously considered carpal tunnel syndrome injuries under this version of the statute. *Schuck*, 529 N.W.2d 894; *Brown v. John Morrell & Co.*, 511 N.W.2d 277 (S.D.1994); *Day*, 490 N.W.2d 720.

[¶ 24] This Court has defined "in the course of" as imposing a time, place, and circumstance requirement. *Zacher*, 514 N.W.2d at 395; *Krier*, 78 S.D. at 119, 98 N.W.2d at 487. "Arising out of" requires the employment contribute to the cause of the injury. *Zacher*, 514 N.W.2d at 395. In *Caldwell*, 489 N.W.2d 353, we examined the issue of causation:

Before an employee can collect benefits under our worker's compensation statutes,

he must establish, among other things, that there is a causal connection between his injury and his employment. That is, the injury must have 'its origin in the hazard to which the employment exposed the employee while doing his work.' This causation requirement does not mean that the employee must prove that his employment was the proximate, direct, or sole cause of his injury; rather, the employee must show that his employment was 'a *contributing factor*' to his injury.

*Id.* at 357–58 (citations omitted) (emphasis original). However, this Court has previously acknowledged an employee need not have an identifiable accident or experience trauma to her person before a medical condition will qualify as a compensable injury. "It is sufficient that the disability 'was brought on by strain or overexertion incident to the employment, though the exertion or strain need not be unusual or other than that occurring in the normal course of employment.'" *Id.* (quoting *Sudrla v. Commercial Asphalt and Materials*, 465 N.W.2d 620, 621 (S.D.1991)).

[¶ 25] An award "cannot be based on possibilities or probabilities, but must be based on sufficient evidence that the claimant incurred a disability arising out of and in the course of his employment." *Wold v. Meilman Food Indus.*, 269 N.W.2d 112, 116 (S.D. 1978). The employee has the burden of persuasion by a preponderance of the evidence and that burden is not sustained where the probabilities are equal. *Caldwell*, 489 N.W.2d at 358; *King*, 83 S.D. at 74, 155 N.W.2d at 186. Finally, we note expert testimony is entitled to no more weight than the facts upon which it is predicated. *Helms*, 1996 SD 8, ¶ 21, 542 N.W.2d at 768; *Bridge v. Karl's, Inc.*, 538 N.W.2d 521, 525 (S.D. 1995).

[¶ 26] Claimant testified she first began noticing numbness in her right hand and arm in the fall of 1989. In January 1990, Dr. Stout, the orthopedic surgeon, examined Claimant and referred her to a neurologist. Dr. Stout testified he initially suspected tho-

racic outlet syndrome. Dr. Wiggs, the neurologist, performed a nerve conduction test in February 1990 and from the results of this test, diagnosed carpal tunnel syndrome in Claimant's right hand.[3] Dr. Wiggs prescribed conservative treatment, a wrist splint and B–6 vitamins. Claimant testified that by May of 1990 the pain and numbness in her right hand was much worse and she visited her regular doctor in Winner, Dr. Schramm. Dr. Schramm took Claimant off work from the hospital and scheduled carpal tunnel release surgery for Claimant with Dr. Stout. Claimant testified that prior to surgery in June 1990, she had an appointment with Dr. Stout at which time they discussed her work activities at the hospital. Continued problems following surgery caused Dr. Stout to refer Claimant to Dr. Hata, a neurologist, who performed two more nerve conduction tests and found permanent nerve damage.

[¶ 27] Dr. Wiggs' opinions regarding Claimant's carpal tunnel syndrome and its causation were received through stipulated medical records. Following an examination of Claimant on February 5, 1990, which included taking her work history and performing a nerve conduction test, Dr. Wiggs diagnosed "Rt Carpal tunnel—probably is work-related." He also wrote to Mr. Houser, CEO of the hospital, on May 24, 1990, in which he stated regarding Claimant, "[s]he does have a right carpal tunnel and I thought it was probably work related." Dr. Wiggs' notes of the nerve conduction test results indicate they are "[q]uite compatible with entrapment in R carpal tunnel. L is in normal range."

[¶ 28] Dr. Stout's medical records were received into evidence as was his deposition testimony. Dr. Stout had seen Claimant nine times between January 1990 and February 1991, including the surgical appointment for the carpal tunnel release. He agreed with Dr. Wiggs' findings of carpal tunnel syndrome and had performed three additional tests in his office. Two of the three tests resulted positive for carpal tunnel which caused Dr. Stout to independently conclude

---

3. In *Day*, 490 N.W.2d at 721, this Court recognized that "[c]arpal tunnel involves a compromise of the median nerve which produces pain and numbness in the thumb, index and middle fingers and part of the ring finger. A nerve conduction study is the main test used for detecting carpal tunnel syndrome."

Claimant was suffering from carpal tunnel syndrome. At the Department of Labor hearing, when asked whether he believed, based on a reasonable medical certainty or probability, that Claimant's carpal tunnel syndrome was caused by her work in the laundry, Dr. Stout stated he thought it was. Dr. Stout further testified he believed any contribution from Claimant's waitress job would be minimal as compared to her job as a laundry aide. However, Dr. Stout's opinion as to causation was limited by the fact he conceded that this area was a bit out of his territory. Further the Department found Dr. Stout did not have at his disposal information concerning work activities from the Claimant's other jobs.

[¶ 29] Dr. Hata's opinions were also received into evidence through his stipulated medical records. Dr. Hata diagnosed carpal tunnel syndrome when he saw Claimant in October of 1990. His notes further indicate "[p]atient does have a history of hypothyroidism, on thyroid replacement, and this is a factor in development of carpal tunnel; however, as patient does not have a left carpal tunnel, and reports having normal thyroid functions drawn within the last year, I think this is not [a] significant issue currently." Dr. Hata also ruled out the possibility of thoracic outlet syndrome. In May of 1991, Dr. Hata found Claimant's carpal tunnel to be permanent and stationary.

[¶ 30] The opinion of Dr. Hoversten, an orthopedic surgeon, was also introduced by stipulated medical records. Dr. Hoversten's opinion was further supported, however, by affidavit in which he stated if he were called to testify, he would testify to all the facts, observations, and conclusions set forth in his medical records to a reasonable degree of medical probability. *See* SDCL 19–16–8.2. He was not deposed or called to testify by Claimant who carries the burden of proof on the causation issue. Dr. Hoversten was not one of Claimant's treating physicians but he examined her in his office on August 26, 1991 at Employer's request. At this visit, Dr. Hoversten performed a "grip strength" test in which Claimant was required to squeeze Dr. Hoversten's fingers. Dr. Hoversten concluded Claimant was not using her full strength in her right hand and that she was "prolonging her disability on purpose." He further opined Claimant's condition was probably caused by her hypothyroidism. He reported having reviewed all Claimant's medical records.

[¶ 31] In reviewing worker's compensation cases involving the causal relationship between carpal tunnel injuries and claimants' employment, this Court has noted:

[t]he testimony of professionals is crucial in establishing this causal relationship because the field is one in which laymen ordinarily are unqualified to express an opinion. Unless its nature and effect are plainly apparent, an injury is a subjective condition requiring an expert opinion to establish a causal relationship between the incident and the injury or disability.

*Day*, 490 N.W.2d at 724 (citations omitted); *Schuck*, 529 N.W.2d at 900. Here, the majority of evidence regarding Claimant's injuries was introduced by voluminous stipulated medical records without benefit of interpretation by the doctors who produced these records. By stating that "the testimony of professionals is crucial in establishing this causal relationship" we acknowledged the lack of medical training by lawyers, hearing examiners, and courts to interpret these records. "Expert testimony is required when the subject matter at issue does not fall within the common experience and capability of a lay person to judge." *Caldwell*, 489 N.W.2d at 362 (citing *Podio v. American Colloid Co.*, 83 S.D. 528, 162 N.W.2d 385 (1968)). *See also In re Appeal of Schramm*, 414 N.W.2d 31, 36 n. 7 (S.D.1987) (reviewing a record containing dental records, x-rays, and physical exhibits, this Court stated that "[w]ithout expert testimony, we, like the members of the jury, are left to speculation and conjecture as to their relevance and meaning.") By not deposing these professionals or having them testify at hearing, the parties are likewise limited in the information that might otherwise be available to them.

[¶ 32] Our task on review is to determine whether the record contains sub-

stantial evidence to support the agency's determination. *Helms,* 1996 SD 8, ¶ 10, 542 N.W.2d at 766. The Department determined that only Drs. Stout and Hoversten gave opinions to a reasonable degree of medical probability on the causation issue and that the probabilities were equal that Claimant's condition was either caused by her employment or hypothryroidism. Claimant has not sustained her burden of proof where the probabilities are equal. *Id.* at ¶ 20, 542 N.W.2d at 768. The Department further found Dr. Hoversten's opinions were "strong" in that he reviewed the collective medical records in this case as well as performing his own examination of the Claimant.[4] We find substantial evidence in the record to support the Department's determination. Therefore, we agree that Claimant failed to meet her burden of proving the carpal tunnel syndrome arose out of and in the course of her employment with Baptist Hospital.

**[¶ 33] 4. Whether Claimant is entitled to medical expenses for both the back injury and the carpal tunnel syndrome?**

[¶ 34] Claimant's argument regarding her medical expenses for her back injury under this issue relate to the circuit court's order that her back injury was not caused by her employment. We determined the circuit court ruled in error on this issue, Employer having admitted that Claimant's back injury arose out of and in the course of her employment at Baptist Hospital. Our holding on Issue One dispenses with this issue as it relates to Claimant's back injury.

[¶ 35] The issue of Claimant's medical expenses arising from her carpal tunnel syndrome is deemed moot by our affirmance under Issue Three of the Department's finding no causal relationship between Claimant's employment at Baptist Hospital and her wrist injury.

**[¶ 36] 5. Claimant requests this Court require remand to the Department issues regarding rehabilitation and *Cozine* benefits for presentation of new evidence regarding a change in Claimant's employability status.**

[¶ 37] Claimant requests she be entitled to present new evidence regarding rehabilitation benefits and loss of use benefits under SDCL 62–4–6. In support of her request, Claimant states her employability status has changed since the December 14–15, 1993 Department of Labor hearing due to the existence of new industry in Claimant's work area. Claimant did not elaborate on the specific reasons for this request.

[¶ 38] The Department granted a permanent partial disability award for Claimant's back injury but denied any award based on Claimant's carpal tunnel syndrome, finding this injury did not arise out of her employment with Baptist Hospital. The Department further ruled loss of employability and rehabilitation benefits were not warranted based on Claimant's back injury alone.

[¶ 39] Claimant presented evidence in support of her claim for rehabilitation and loss of use benefits for her back injury at the December 1993 hearing. As noted in our analysis under Issue One, Claimant did not directly appeal the Department of Labor's disability determination of her back injury to this Court. As such, she has waived argument on these issues and cites no authority which would permit this Court to reopen the Department's decision for presentation of new evidence.

[¶ 40] Further, as Claimant failed to prove the requisite causal relationship between her employment with Baptist Hospital and her wrist injury, Claimant's request to present new evidence of employability in connection with this injury is denied.

**CONCLUSION**

[¶ 41] We reverse on Issue One and remand to the circuit court with instructions to reinstate the Department's Findings of Fact numbered 57 and 60 and Conclusions of Law

---

4. The Department found, "[c]laimant's testimony is similarly flawed throughout this record and her credibility is questionable." Claimant did not appeal this finding and we are bound by it.

numbered 21 and 23. We affirm on the Notice of Review issue raised by Employer and Wausau. We affirm on Issue Three. We need not further consider Issues Four and Five due to our determination under Issues One and Three.

[¶ 42] MILLER, Chief Justice, and SABERS, AMUNDSON, and KONENKAMP, Justices, concur.