1996 SD 118

**Marc PAULSON, Appellant,**

v.

**BLACK HILLS PACKING COMPANY and St. Paul Fire And Marine Insurance Company, Appellees,**

and

**Western Wholesale Liquor Company and Liberty Mutual Insurance Company.**

Nos. 19450, 19483.

Supreme Court of South Dakota.

Considered on Briefs May 22, 1996.

Decided Sept. 11, 1996.

Rehearing Denied Oct. 9, 1996.

Lawrence R. Bihlmeyer, Rapid City, for appellant.

J.G. Shultz of Woods, Fuller, Shultz & Smith, Sioux Falls, for appellees Black Hills Packing Co. and St. Paul Fire & Marine.

ERICKSON, Circuit Judge.

[¶ 1] Marc Paulson (Paulson) filed a petition with the Department of Labor (Department) seeking worker's compensation benefits for back injuries incurred while employed at Black Hills Packing Company (BHP). The Department found in favor of Paulson.

BHP appealed to the circuit court alleging that Paulson's most recent injury was an aggravation of his previous back condition caused while working for a subsequent employer thereby absolving BHP of further liability; that Paulson was not entitled to rehabilitation benefits; that he failed to give the required notice of his retraining claim; and that he was not entitled to both rehabilitation benefits and Cozine disability benefits. The circuit court reversed the Department's decision on the sole issue of causation which then rendered the other issues moot. Paulson now appeals that decision. We affirm.

## FACTS

[¶ 2] Paulson worked for BHP for twenty years from 1969 until it closed in 1989. In January 1989, Paulson was moving a pallet of meat when he stepped on another pallet twisting his back. He was off work six to eight weeks. In August 1989, Paulson was skinning heads when suddenly he was unable to move. On this occasion he was off work eight to ten weeks. Again he returned to work. BHP closed in December 1989.

[¶ 3] After BHP closed, Paulson worked for its new owner, GFI America, refurbishing the plant. He then worked for GFI as an on-line foreman. Paulson quit this job in June 1990. Subsequently he worked at several different jobs.

[¶ 4] In January 1992, Paulson was working for Western Wholesale Liquor Company (Western). In the course of moving cases of liquor from a pallet to a shelf, he felt a sharp sensation in his back. That evening he went to the emergency room and ultimately his physician advised him to stop physical types of labor and sent him to the South Dakota Division of Rehabilitation Services for vocational retraining.

[¶ 5] The Department found that this 1992 injury was a recurrence of his prior BHP injury, thus BHP was liable. The circuit court on appellate review determined that this 1992 injury was an aggravation of the BHP injuries controlled by the "last injurious exposure rule," thus BHP was not liable.

## ANALYSIS

### [¶ 6] I. Standard of Review

[¶ 7] The issue before this Court is the Department's application of the "last injurious exposure rule." Issues involving the application of a rule of law are questions of law fully reviewable *de novo*. *Schuck v. John Morrell & Co.*, 529 N.W.2d 894, 896 (S.D.1995).

### [¶ 8] II. Application of the "last injurious exposure rule"

[¶ 9] BHP contends they are not liable because Paulson's 1992 back episode constituted a successive injury to the injury he received in 1989. BHP further contends that this "new injury" while working for his subsequent employer was, at best, an aggravation of Paulson's prior back condition which under the "last injurious exposure rule" relieves them of liability.

[¶ 10] This "rule" provides that:

When a disability develops gradually, or when it comes as the result of a succession of accidents, the insurance carrier covering the risk at the time of the most recent injury or exposure bearing a causal relation to the disability is usually liable for the entire compensation.

*Novak v. C.J. Grossenburg and Son*, 89 S.D. 308, 232 N.W.2d 463, 464–65 (1975)(quoting 3 Larson, Workmen's Compensation Law, § 95.00).

[¶ 11] As Paulson correctly argues, "in successive injury cases, the original employer/insurer remains liable if the second injury is a mere recurrence of the first." *Schuck*, 529 N.W.2d at 900.

[¶ 12] The core issue in this case is whether Paulson's disability was a recurrence or an aggravation of his 1989 injury. In making this determination there are certain guidelines. To determine that an injury was an "aggravation" of a prior episode, the evidence must show:

1. A second injury as that term is used in this jurisdiction;
2. That this second injury contributed independently to the final disability.

To determine that the second episode was a "recurrence" of the prior injury the evidence must show:

1. There have been persistent symptoms of the injury;
2. No specific incident that can independently explain the second onset of symptoms.

*Schuck*, 529 N.W.2d at 900.

[¶ 13] To make this determination, expert opinion is required. *Schuck*, 529 N.W.2d at 900. To review this issue, Judge Zinter properly made a *de novo* review of the medical expert's testimony. *Helms v. Lynn's Inc.*, 542 N.W.2d 764, 766 (S.D.1996). This consisted of the deposition of Dr. Steven K. Goff and the affidavits of Dr. Wayne J. Anderson and Dr. Alvin E. Wessel. Judge Zinter found Dr. Goff's testimony to be more credible because Dr. Goff was thoroughly and adversely examined under oath and steadfastly and articulately explained his opinion. This was in contrast to the rather sterile affidavits of Drs. Anderson and Wessel, both of which merely incorporated their entire medical records. From these records counsel refers the Court to two or three sentences lifted from their treatment records.

[¶ 14] Judge Zinter then concluded that:

1. There had been a succession of accidents;
2. After the 1989 accident there is *no* history of persistent symptoms lasting until 1992 similar to those found after the 1992 incident;
3. The 1992 injury caused an onset of more severe symptoms which had not been present after the 1989 accident.

[¶ 15] Based upon these findings, Judge Zinter concluded that the 1992 episode constituted a "second injury" because it resulted in new problems or symptoms not present prior to 1992 and the new problems or symptoms did not subside after 1992.

[¶ 16] This caused Judge Zinter to conclude that the Department has erred as a matter of law in applying the "last injurious injury exposure rule" prompting his reversal.

**[¶ 17] III. Conclusion**

[¶ 18] Our review, like that of Judge Zinter is *de novo*. Paulson has the burden of proving by a preponderance of the evidence that the 1992 episode was a recurrence, rather than an aggravation of his 1989 injury. The key to this decision is the medical evidence. While not controlling, Judge Zinter's conclusions are well reasoned, substantially supported by the evidence and are persuasive. Our review leads us to the same conclusion. The Department erred in its application of the "last injurious injury exposure rule." Therefore, we affirm the circuit court's reversal of the Department's decision. We also agree that this reversal is dispositive of the case. Therefore, the other issues raised need not be addressed.

[¶ 19] MILLER, C.J., and KONENKAMP and GILBERTSON, JJ., concur.

[¶ 20] SABERS, J., dissents.

[¶ 21] ERICKSON, Circuit Judge, for AMUNDSON, J., disqualified.

SABERS, Justice (dissenting).

[¶ 22] The Department should have been affirmed because there is substantial record evidence to support its decision. Although the majority opinion correctly states the standard of review for a question of law, it ignores the fact that the circuit court specifically overruled findings of fact made by the agency and substituted its own for those of the agency.

This court's standard of review of administrative appeals is clearly defined. We will overrule an agency's findings of fact only when they are clearly erroneous. The question is *not* whether there is substantial evidence *contrary* to the agency finding, but whether there is substantial evidence to support the agency finding. In other words, even if there is evidence in the record which tends to contradict the Department's factual determination, so long as there is some "substantial evidence" in the record which supports the Department's determination, this court will affirm. Great weight is given to the findings made and inferences drawn by an agency

on questions of fact. Conclusions of law are given no deference and are fully reviewable. When reviewing evidence presented by deposition, we do not apply the clearly erroneous standard but review that testimony as though presented here for the first time.

*Hendrix v. Graham Tire Co.*, 520 N.W.2d 876, 878–79 (S.D.1994) (emphasis added) (citations and internal quotations omitted). The record is primarily made up of depositions and affidavits:

[w]hen discussing evidence submitted by deposition, this court said: "Since [the deponent] did not appear before the court when testifying we have reviewed his testimony as though presented here in the first instance. Consequently, the clearly erroneous rule ... does not apply. In other words, it is not burdened with a presumption in favor of the trial court's determination."

. . . .

"With the testimony presented to the trial court [by deposition] there is no presumption in favor of the trial court's determinations. Accordingly, it is our duty to review the evidence and determine the issues involved as though presented here in the first instance." In an administrative appeal, the trial court's decision below is based entirely on the written record from the agency. We are fully as capable of reading the agency record as was the trial court. We therefore review the agency record in the same light as does the trial court to determine whether or not the agency's decision was clearly erroneous in light of all the evidence in the record.

*Application of Northwestern Bell Tel. Co.*, 382 N.W.2d 413, 415–16 (S.D.1986) (citations omitted) (alterations in original). *Accord First Nat'l Bank of Biwabik, Mn. v. Bank of Lemmon*, 535 N.W.2d 866, 871 (S.D.1995) (holding documentary evidence is reviewed de novo).

[¶ 23] The majority adopts the circuit court's findings of fact, calling them "well reasoned, substantially supported by the evidence and ... persuasive." ¶ 15. The majority's approach is wrong—it is not in accordance with our well-settled standard of

review. *Hendrix, supra.* The scope of our inquiry should be whether there is "substantial evidence" to support the determination of the *Department, not* the decision of the circuit court.

[¶ 24] All three physicians who examined Paulson agreed there was no discernible physiological change to his back condition. In Dr. Wayne Anderson's affidavit, he expressed his opinion that Paulson's impairment stemmed from his 1989 injury at BHP; furthermore, he pointed out that "[Paulson's] objective testing before and after his injury in January 27, 1992, was essentially the same. So, I believe that was a transient injury which resolved to his pre-existing condition." Dr. Alvin Wessel, Jr. also testified by affidavit that "[he did] not feel that the second event involved with lifting the liquor at the Liquor Store exacerbated the back condition beyond what the first injury had already caused him problems with [sic] ... the overall outcome was [not] any worse as a result of the second injury."

[¶ 25] Finally, Dr. Steven Goff testified by deposition to the following:

1) That there was *no* evidence of new injury and *no* evidence of structural change;

2) that the risk of recurrence for Paulson's initial injury was "quite high;"

3) Paulson showed symptomatic, *not* mechanical, improvement since the 1989 injury and prior to the 1992 incident;

4) Paulson's back problem, which resulted from the 1989 BHP injury was never going to go away; it was not curable;

5) "the chances of [Paulson] doing something to increase his symptom level again is high;"

Goff conceded the following:

1) An increase in pain symptoms for the victim of a back injury is possible without a specific triggering event;

2) The lifting incident "obviously was not [the] most important factor in the natural history development of [Paulson's back] problem;" and that "the natural history of the back problem [could have] led to [the] same ending point;" and finally that

3) he would not have been surprised to see Paulson's change of symptoms in the absence of any lifting incident.

[¶ 26] The testimony of these three doctors constitutes "substantial evidence" to support the Department's finding of a recurrence.

[¶ 27] The circuit court seems to view Goff's hesitation to defer to Wessel's opinion as pivotal; however, Goff did agree Wessel was in a better position to evaluate, or render an opinion upon, Paulson's condition. Goff's stated reason for his reluctance to completely defer to Wessel was because "we might not be comparing the same thing." Almost in the same breath, Goff testifies the *only* source *either* doctor had available from which to draw a conclusion was Paulson's self-reported symptoms:

Well, what I'm trying to say here is that the—all we have to go on here to decide whether there's been a worsening of his condition is his symptoms because we don't have another documentation of it. In other words, we don't have the documentation that [structural change occurred]. [We have] to base it on what he tells us[.]

[¶ 28] As indicated, the testimony of these three physicians constitutes the requisite "substantial evidence" to affirm the Department's decision. Therefore, I dissent.