2002 SD 137

## ST. LUKE'S MIDLAND REGIONAL MEDICAL CENTER, n/k/a Avera St. Luke's and Presentation Sisters Workers' Compensation Trust, Employer, Insurer and Appellees,

v.

## Mary Beth KENNEDY, Claimant and Appellant.

Nos. 22223, 22224.

Supreme Court of South Dakota.

Argued May 29, 2002.

Decided Nov. 13, 2002.

Michael S. McKnight and Lisa Hansen Marso of Boyce, Murphy, McDowell & Greenfield. Sioux Falls, South Dakota, Attorneys for employer, insurer and appellees.

J.G. Shultz of Woods, Fuller, Shultz, & Smith. Sioux Falls, South Dakota, Attorneys for claimant and appellant.

VON WALD, Circuit Judge.

[¶ 1.] Mary Beth Kennedy (Kennedy) appeals a circuit court judgment reversing an award of workers' compensation benefits to Kennedy by the South Dakota Department of Labor (DOL). Avera St. Luke's Midland Regional Medical Center (St.Luke's) has filed a notice of review. We reverse.

### FACTS

[¶ 2.] At the time Kennedy initiated workers' compensation proceedings, she was employed as a nurse with Falls Memorial Hospital in International Falls, Minne-

sota. This case stems from a Minnesota workers' compensation hearing in which she was denied benefits because her inability to work was directly caused by an injury that occurred while she was employed by St. Luke's in Aberdeen.

[¶ 3.] Kennedy has a history of allergic reactions to pollens and animal danders and a history of childhood eczema and various food allergies. She was first diagnosed with a latex allergy in August 1994 while employed at St. Luke's. After the diagnosis, her treating physician informed Kennedy that she should avoid contact with all latex products. The physician wrote a letter to St. Luke's advising that Kennedy had a severe latex allergy and should avoid all contact with latex products. St. Luke's responded by giving Kennedy non-latex gloves. Kennedy was unaware of the severity of her allergy or that latex particles may become airborne.

[¶ 4.] Although employed by St. Luke's as a nurse, Kennedy had no allergic reactions to latex between August 1994 and July 8, 1996. On July 8, during an obstetric emergency c-section, Kennedy pulled a latex glove over her non-latex glove to avoid blood contact. While opening the latex gloves, Kennedy came into contact with a large amount of airborne latex dust particles that were partially caused by the powder that the manufacturers used inside the gloves. Shortly after taking the c-section baby out of the delivery room, Kennedy suffered an acute anaphylactic[1] reaction, and required emergency medical attention. This was her first anaphylactic reaction from her latex allergy. St. Luke's paid the related medical bills and workers' compensation claims and the file was closed on November 5, 1996.

[¶ 5.] In late 1996, Kennedy moved to International Falls, Minnesota with her family. Her employer, Falls Hospital, was aware of her allergy to latex. Kennedy next suffered allergic reactions on January 22, 1997 and March 21, 1997 followed closely by another on March 31, 1997. The January reaction occurred at her home and the two reactions in March occurred at International Falls Hospital. Kennedy has not returned to work since her last reaction in March 1997. After these reactions, she sought the advice of allergists who instructed her to stay away from aerosolized latex and to remain in a latex-free environment. They further advised that these reactions are so life-threatening that she should stay within driving distance of emergency medical facilities.

[¶ 6.] It was after these episodes that Kennedy pursued a workers' compensation claim in Minnesota. The claim was denied. Expert testimony from the Minnesota hearings on Kennedy's claim placed the cause of her severe allergic reactions on an initial injury. According to all of the experts, the "point of no return," or injury, occurred at the time of Kennedy's first anaphylactic reaction in July 1996 at St. Luke's. At that point, her reactivity threshold was permanently lowered meaning that a smaller dose of latex will produce a response. It was after the denial of her claim by the Minnesota Workers' Compensation Board that Kennedy decided to make a claim against St. Luke's for permanent and total disability benefits based upon the injury in July 1996.

[¶ 7.] Kennedy's workers' compensation case against St. Luke's was brought before DOL. A hearing was held on De-

---

**1.** "[A]naphylactic shock. A sudden, severe and sometimes fatal allergic reaction marked by a sharp drop in blood pressure, urticaria, and breathing difficulties caused by exposure to a foreign substance [allergen] after a preliminary exposure." The American Heritage College Dictionary, 48 (3d ed 1997).

cember 22, 1999. DOL issued a decision on June 6, 2000 and findings of fact and conclusions of law on June 30, 2000. DOL awarded Kennedy permanent total disability benefits under SDCL 62–1–1(7). St. Luke's appealed that decision to the circuit court. A ruling was issued on October 19, 2001. It affirmed the fact that Kennedy's condition was an occupational disease, however it reversed DOL by ruling that the disease was not caused by an injury. It also reversed DOL's decision by ruling that the specific notice statutes in SDCL 62–8–29 and 13 applied over the general notice statutes in 62–7–10, thereby precluding the award of workers' compensation to Kennedy. Kennedy appeals that decision. St. Luke's raises two issues by notice of review.

### ‹ STANDARD OF REVIEW

[¶ 8.] Our standard of review in workers' compensation cases is well settled.

In workers' compensation cases, this Court gives great weight to the findings and inferences made by DOL on factual questions. *Wagaman v. Sioux Falls Const.*, 1998 SD 27, ¶ 12, 576 N.W.2d 237, 240 (citing *Sopko v. C & R Transfer Co., Inc.*, 1998 SD 8, ¶ 6, 575 N.W.2d 225). "Under SDCL 1–26–37, when the issue is a question of fact then the clearly erroneous standard is applied to the agency's findings; however, when the

issue is a question of law, the actions of the agency are fully reviewable." *Id.* (citing *Loewen v. Hyman Freightways, Inc.*, 1997 SD 2, ¶ 6, 557 N.W.2d 764, 766). When reviewing agency findings, we "will reverse, only if, after careful review of the entire record, we are definitely and firmly convinced a mistake has been made." *Id.* (citation omitted). *Gordon v. St. Mary's Healthcare Center*, 2000 SD 130, ¶ 16, 617 N.W.2d 151, 156.

### ISSUE ONE

[¶ 9.] **Was Kennedy's allergic reaction on July 8, 1996 a compensable injury under SDCL 62–1–1(7)?**[2]

■ [¶ 10.] Determining whether an allergic reaction is a compensable injury is a matter of first impression for this Court. DOL concluded that Kennedy suffered a compensable injury under SDCL 62–1–1(7)(b), holding that she had preexisting allergies which, when combined with latex at work, produced anaphylactic shock and the consequences thereof. DOL decided that this disability was ongoing and was the major cause of Kennedy's present inability to work. As a matter of law, the circuit court reversed DOL's ruling by holding that Kennedy had an occupational disease for which she failed to properly give notice and that she could not recover workers' compensation benefits.

---

2. SDCL 62–1–1(7) provides:

(7) "Injury" or "personal injury," only injury arising out of and in the course of the employment, and does not include a disease in any form except as it results from the injury. An injury is compensable only if it is established by medical evidence, subject to the following conditions:
(a) No injury is compensable unless the employment or employment related activities are a major contributing cause of the condition complained of; or
(b) If the injury combines with a preexisting disease or condition to cause or prolong

disability, impairment, or need for treatment, the condition complained of is compensable if the employment or employment related injury is and remains a major contributing cause of the disability, impairment, or need for treatment.
(c) If the injury combines with a preexisting work related compensable injury, disability, or impairment, the subsequent injury is compensable if the subsequent employment or subsequent employment related activities contributed independently to the disability, impairment, or need for treatment.

[¶ 11.] The allergists who testified agreed that the July 1996 exposure was the "point of no return" for Kennedy and that this exposure was the major contributing cause of her disability. Since that point, any exposure to latex is now a major life or death situation for Kennedy. Is this reaction an injury in South Dakota? Claimant compares this injury to back injuries or heart disease where the cause cannot be linked to one occasion, but a series of occasions leading up to the disabling injury. South Dakota has a history of awarding compensation to claimants, even though they cannot prove any specific trauma, if they prove a history of injury to the body that occurs in the normal course of employment. *See e.g. Caldwell v. John Morrell' & Co.*, 489 N.W.2d 353 (S.D.1992) (man compensated for back condition without a specific work incident); *Sudrla v. Commercial Asphalt & Materials*, 465 N.W.2d 620 (S.D.1991).[3] In *Kirnan v. Dakota Midland Hosp.*, 331 N.W.2d 72 (S.D. 1983), this Court compensated a man who suffered a heart attack at work. *See also Westergren v. Baptist Hosp. of Winner*, 1996 SD 69, 549 N.W.2d 390 (carpal tunnel syndrome).

[¶ 12.] This Court may also look to other state courts for guidance on the issue of classifying an allergic reaction as an injury. Recently, in *St. Luke's Hosp. v. Gray*, 604 N.W.2d 646 (Iowa 2000), the Iowa Supreme Court ruled that a nurse suffering from a latex allergy was entitled to coverage for a work-related injury rather than an occupational disease. *Id.* at 650.

In that case, the claimant was faced with increased symptomology associated with latex in the workplace. Her doctors advised that she was permanently partially disabled because her workplace could not be made latex-free.

[¶ 13.] Although Kennedy was predisposed to her allergy and was, no doubt, suffering from the disease of latex allergy, an injury may occur when a preexisting disease makes an employee more susceptible to a work-related injury. As this Court stated in *Elmstrand v. G. & G. Rug & Furniture Company*, 77 S.D. 152, 155, 87 N.W.2d 606, 608 (1958):

> In so far as the pre-existing condition is concerned we must take the employee as we find him. If a compensable event contributed to the final disability, recovery may not be denied because of the pre-existing condition, even though such condition was the immediate cause of the disability.

Again, in *Hendrix v. Graham Tire Co.*, 520 N.W.2d 876, 879 (S.D.1994), this Court determined that preexisting conditions are not an automatic disqualification for workers' compensation. However, an injury is always a question of fact to be determined by the Department based upon evidence and testimony.

> A pre-existing medical condition or infirmity does not disqualify a claim under the "arising out of employment" requirement if the employment aggravated, accelerated, or combined with the condition or infirmity to produce the disability

---

3. In *Sudrla,* this Court observed:

South Dakota law further requires a showing that employment be *a contributing factor* in the injury suffered. It must be established that the [injury] was brought on by strain or overexertion incident to the employment, though the exertion or strain need not be unusual or other than that occurring in the normal course of employ-

ment. *Kirnan v. Dakota Midland Hosp.*, 331 N.W.2d 72, 74 (S.D.1983); 1A Larson, *The Law of Workmen's Compensation*, Sec. 12.26, at 3–348.71 (1985); *Harden v. S.D. Credit Union League, Inc.*, 87 S.D. 433, 209 N.W.2d 665 (1973); *Oviatt v. Oviatt Dairy Inc.*, 80 S.D. 83, 119 N.W.2d 649 (1963). *Sudrla,* 465 N.W.2d at 621 (emphasis original).

for which compensation is sought. *Guthmiller v. Dept. of Transportation,* 502 N.W.2d 586, 590 (S.D.1993) (Sabers, J., dissenting) (citing 1 Larson, Workmen's Comp. § 12.25.) " 'Whether the employment aggravated, accelerated, or combined with the internal weakness or disease to produce the disability is a question of fact, not law, and a finding of fact on this point by [Department] based on any medical testimony . . . will not be disturbed on appeal.' " *Id.*

*Hendrix,* 520 N.W.2d at 879.

[¶ 14.] DOL made a factual ruling that Kennedy's significant allergic reaction of July 1996 was a compensable injury under SDCL 62–1–1(7) causing all subsequent anaphylactic reactions to latex. This decision was legally sound and based on solid medical evidence. DOL's ruling is not clearly erroneous and will not be disturbed.

## ISSUE TWO

[¶ 15.] **Is Kennedy's allergy an Occupational Disease as defined by SDCL ch 62–8?**

[¶ 16.] DOL found that Kennedy's allergy might indeed be an occupational disease because latex allergy is more prevalent in the medical industry.[4] Being diagnosed with this condition would decrease the chances of finding employment in the medical field. However, based upon the medical experts, Kennedy's allergy was not life threatening and could have been controlled up until July 1996. At that time, Kennedy's exposure to latex at St Luke's was so great that she can no longer be exposed to latex products. The experts diagnosed this condition as irreversible. At the time of injury, Kennedy was unaware of the dangers of this illness.

[¶ 17.] This Court will not second-guess the factual findings of DOL unless they are clearly erroneous. *Gordon, supra.* In this case, DOL found that the allergic reaction in 1996 was more closely recognized as a workplace injury rather than an injury due to an occupational disease. The allergy at the time of injury became an occupational disease, but on July 8, 1996, was still just a condition that was aggravated by events at the workplace. The findings of DOL are not clearly erroneous and this injury is not barred because of the occupational disease statutes, SDCL ch 62–8.

## ISSUE THREE

[¶ 18.] **Does Kennedy's subsequent exposure at the Minnesota hospital bar her claim against St. Luke's?**

[¶ 19.] The last issue we address is St. Luke's question in its notice of review. The answer is predicated on South Dakota's last injurious exposure rule. South Dakota has adopted this rule when dealing with successive injuries. Under the rule, " '[w]hen a disability develops gradually, or when it comes as a result of a succession of accidents, the insurance carrier covering the risk at the time of the most recent injury or exposure bearing a causal relation to the disability is usually liable for the entire compensation.' " *Enger v. FMC,* 1997 SD 70, ¶ 12, 565 N.W.2d 79, 83 (quoting *Schuck v. John Morrell & Co.,* 529 N.W.2d 894, 900 (S.D.1995)) (citing *Novak v. C.J. Grossenburg & Son,* 89 S.D. 308, 311, 232 N.W.2d 463, 464–65 (1975)).

[¶ 20.] In the recent case of *Truck Ins. Exchange v. CNA,* 2001 SD 46, ¶¶ 17–18, 624 N.W.2d 705. 624 N.W.2d 705, 709, we reiterated the criteria for determining whether the last known injury is a succes-

---

4. Studies reveal that 6% to 17% of the health-care workforce suffers from latex allergy.

sive injury or a recurrence of the original injury:

The application of the last injurious exposure rule to a particular claim is based on a factual determination: whether the successive injury is a mere recurrence or an independent aggravation of the first injury.

In successive injury cases, the original employer/insurer remains liable if the second injury is a mere recurrence of the first. If the second injury is an aggravation that contributes independently to the final disability then the subsequent employer/insurer is liable.

*Schuck,* 529 N.W.2d at 900.

The distinction between the meaning of these two concepts is gray. *Enger v. FMC,* 1997 SD 70, ¶ 17, 565 N.W.2d 79, 84. " 'If the second injury takes the form merely of a recurrence of the first, and if the second incident does not contribute even slightly to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second.' " *Id.* (quoting 9 Arthur Larson, Larson's Workmen's Compensation Law § 95.23.)

[¶ 21.] In this case, Kennedy was unaware after the first injury that she would be prone to more allergic reactions. Medical testimony indicated that the cause of the subsequent reactions in Minnesota was directly linked to the reaction at St. Luke's. To make such a determination, this court has set out guidelines:

To determine that an injury was an aggravation of a prior episode, the evidence must show: 1) a second injury as that term is used in this jurisdiction; and 2) that this second injury contributed independently to the final disability. *Paulson v. Black Hills Packing Co.,* 1996 SD 118, ¶ 12, 554 N.W.2d 194, 196. To determine that the second episode was a recurrence of the prior injury the evidence must show: 1) there have been persistent symptoms of the injury; and 2) no specific incident that can independently explain the second onset of symptoms. *Id.* Because an injury is a subjective condition, an expert opinion is required to establish a causal connection between the incident or injury and disability. *Day v. John Morrell & Co.,* 490 N.W.2d 720, 724 (S.D.1992).

*Truck Ins. Exchange,* 2001 SD 46 at ¶ 20, 624 N.W.2d at 709.

■ [¶ 22.] According to the guidelines set by this Court, DOL was not clearly erroneous in its factual determination that the reactions in the Minnesota Hospital did not contribute independently to the final disability suffered by Kennedy. Instead, these reactions were caused by the injury at St. Luke's and were recurrences. "In successive injury cases, the original employer/insurer remains liable if the second injury is a mere recurrence of the first." *Schuck,* 529 N.W.2d at 900.

## CONCLUSION

[¶ 23.] Because this case essentially turns on a factual determination, DOL's ruling will stand unless clearly erroneous. Nothing in the record indicates that is the case. Therefore, the findings and conclusions of DOL are affirmed and the judgment of the circuit court is reversed.

[¶ 24.] GILBERTSON, Chief Justice, and KONENKAMP, Justice, and MILLER, Retired Justice, concur.

[¶ 25.] AMUNDSON, Retired Justice, dissents.

[¶ 26.] VON WALD, Circuit Judge, for SABERS, Justice, disqualified.

[¶ 27.] MILLER, Retired Justice for ZINTER, Justice, disqualified.

AMUNDSON, Retired Justice (dissenting).

[¶ 28.] In administrative appeals, we have held that in order for there to be a meaningful appellate review where the trial court has reversed the administrative agency's decision, Findings of Fact and Conclusions of Law must be entered by the trial court. *Schroeder v. Dep't of Soc. Serv.*, 529 N.W.2d 589, 591 (S.D.1995).

[¶ 29.] A review of this record reveals a circuit court Order signed Nov. 13, 2001, which states that the circuit court has entered its Findings of Fact and Conclusions of Law setting forth its rationale for reversal of the Department's Findings of Fact and Conclusions of Law signed June 30, 2000. The record does not contain the Findings of Fact and Conclusions of Law as mentioned in the circuit court's Order.

[¶ 30.] In order for this meaningful appellate review, the circuit court's Findings of Fact and Conclusions of Law must be in the record before we can render our decision. Therefore, I would remand this case so that the circuit court's Findings of Fact and Conclusions of Law can be incorporated into the record. In the event no Findings of Fact and Conclusions of Law have been prepared it is necessary that such be completed so that this meaningful review may be made by this Court.