#24940, #24958-a-JKK

**2009 SD 7**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

KELLY J. BAIER,                              Claimant and Appellee,

    v.

DEAN KURTZ CONSTRUCTION,
INC.,                                        Employer and Appellant,

BITUMINOUS INSURANCE
COMPANIES,                                   Insurer and Appellant,

    and

MID-CENTURY INSURANCE
COMPANY,                                     Insurer and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

HONORABLE LORI S. WILBUR
Judge

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 12, 2009

OPINION FILED **02/04/09**

JON J. LaFLEUR of
LaFleur, LaFleur and LaFleur, P.C.
Rapid City, South Dakota

Attorneys for appellee
Kelly J. Baier.

ERIC C. BLOMFELT of
Blomfelt & Associates, P.C.
Windsor, Colorado

JEREMY D. NAUMAN
Rapid City, South Dakota

Attorneys for appellee
Mid-Century.

PATRICIA A. MEYERS
STEPHEN C. HOFFMAN of
Costello, Porter, Hill, Heisterkamp,
   Bushnell & Carpenter, LLP
Rapid City, South Dakota

Attorneys for appellant.

KONENKAMP, Justice

[¶1.]        Kelly Baier suffered from a degenerative arthritic hip disability. During the course of his employment, Baier's employer was insured by two separate workers' compensation insurers.  The current insurer disputes its responsibility to pay Baier's workers' compensation benefits.  The Department of Labor found the current insurer liable and awarded benefits.  The insurer appeals and we affirm.

## Background

[¶2.]        Kelly Baier began working for Dean Kurtz Construction (Kurtz) in 1987 as a carpenter's helper and later as a lead man and job foreman.  On September 24, 1999, Baier suffered an injury to his low back while at work.  The injury was work related and Kurtz's insurer at the time, Mid-Century, paid Baier's workers' compensation benefits.  After considerable treatment for his back, Baier was released to return to work in May 2000, with certain permanent restrictions: twenty pound lifting maximum; limited bending and twisting at the waist; work involving squatting reduced to occasional; and changing positions from standing, sitting, and walking every 45 minutes.  Baier returned to work at Kurtz as a project superintendent.  The work required physical labor, but was within his restrictions.

[¶3.]        On May 12, 2004, Baier visited his doctor for a routine physical examination.  During the exam, he told Dr. Allen Nord that he was experiencing chronic hip pain in both hips, but that the right was worse than the left.  Baier explained that the pain had been slowly but steadily getting worse and that it caused him discomfort in his job.  Dr. Nord ordered x-rays, which showed "[a]dvanced changes of degenerative joint disease affecting both hips."  Baier was

referred to an orthopedic surgeon. On May 26, 2004, Baier reported a first report of injury with Kurtz. Dr. Mark Harlow, an orthopedic surgeon, saw Baier in July 2004. He recommended that Baier undergo bilateral hip replacement. According to Dr. Harlow, Baier's x-rays showed "end stage degenerative arthritis, which shows bone-on-bone contact and entophyte formation involving both hips." Baier's right hip was replaced in August 2004, and his left in October 2004.

[¶4.] Baier did not return to work until January 2005. Dr. Harlow imposed the following restrictions: stand one hour per day with breaks; sit seven hours per day with breaks; drive one hour per day with breaks; walk one hour per day with breaks; limit work to sedentary or light duty classification; limit lifting to twenty-five pounds; no impact activity such as use of jackhammer or jumping off equipment. On August 25, 2005, Baier was laid off because Kurtz had no work within Baier's restrictions.

[¶5.] After Baier's first hip replacement, he petitioned the Department of Labor for a hearing to address his entitlement to workers' compensation benefits from Kurtz. Kurtz and its insurer at the time, Bituminous Insurance Companies, denied that Baier's hip disability was work related, alleged that Baier failed to timely give notice, and averred that the hip surgery was the result of Baier's previous back injury, at which time Kurtz was insured by Mid-Century. In March 2005, Bituminous and Kurtz moved to add Mid-Century as an additional insurer and the Department issued an order granting the motion.

[¶6.] In October 2005, a telephonic prehearing conference was held, after which the Department issued a prehearing order indicating that the issues

scheduled to be presented at the hearing would be: medical expenses, causation, temporary total disability, which insurer is responsible, and apportionment. The order also listed the intended witnesses from all parties, and the intended deposition testimony. However, another telephonic conference was held in November 2005. As a result of this conference, for which there is no record, the Department issued a letter indicating that the hearing that was previously set to address the issues of medical expenses, causation, and temporary total disability was cancelled. The letter further indicated that the parties agreed to submit all outstanding issues to the Department on the record, including the issues of apportionment and which insurer is responsible.

[¶7.] On December 13, 2005, counsel for Baier wrote the Department requesting that a status hearing be held to set a scheduling order for the hearing on the issues of which insurer is responsible and apportionment. The Department issued a notice of hearing for January 9, 2006. On December 27, 2005, Bituminous moved the Department for summary judgment on the issues of coverage and apportionment. A telephonic conference was held on January 9, 2006. There is no record of the conference, but the Department issued a letter on January 10, stating that "[t]he parties have agreed to submit the outstanding issues on the record. The two issues to be addressed are the application of the last injurious exposure rule and apportionment." The letter further indicated what the record was to consist of and a briefing schedule for the parties.

[¶8.] On June 7, 2006, the Department issued its written decision declaring Bituminous the responsible insurer. Applying the last injurious exposure rule, the

Department concluded that because Bituminous was the insurance carrier covering the risk at the time of Baier's most recent exposure bearing a causal relation to the disability, Bituminous was responsible for Baier's workers' compensation benefits. The Department directed the parties to submit proposed findings of fact, conclusions of law, and objections. Kurtz and Mid-Century submitted proposed findings of fact and conclusions of law, as did Baier. Bituminous, however, did not, and informed the Department, after inquiry, that it did not intend to submit any proposed findings of fact or conclusions of law.

[¶9.] On August 2, 2006, the Department issued findings of fact, conclusions of law, and an order declaring Bituminous liable for Baier's workers' compensation benefits. The order further declared that "[t]he Department shall retain jurisdiction over the issue of extent and degree of Claimant's disability, if any." No appeal to the circuit court followed this order. On September 28, 2006, under a stipulation of the parties, the Department entered an order dismissing Mid-Century from the action. No appeal was taken from the order dismissing Mid-Century.

[¶10.] On November 20, 2006, after a telephonic conference, the Department issued a prehearing order to address the issue of Baier's benefits. The order further listed the intended live witnesses, deposition testimony, and medical records. A hearing on Baier's benefits was held on January 4, 2007. On November 14, 2007, the Department issued a letter decision, which set forth Baier's weekly workers' compensation rate, found Baier permanently and totally disabled, and determined that Baier had been unable to secure continuous and suitable employment. The parties were directed to submit proposed findings of fact, conclusions of law, and

-4-

objections. All parties submitted proposed findings and conclusions, and on December 7, 2007, the Department issued its findings of fact, conclusions of law, and an order in accord with its letter decision.

[¶11.] Bituminous appealed to the circuit court. It challenged the Department's August 2, 2006 order, findings of fact and conclusions of law, the June 7, 2006 letter decision finding Bituminous liable for Baier's benefits, the December 7, 2007 order, findings of fact and conclusions of law, and the November 14, 2007 letter decision, finding Baier permanently and totally disabled. In response, Baier asserted that the circuit court did not have jurisdiction to consider the appeal because Bituminous failed to timely appeal from the Department's August 2, 2006 order and its June 7, 2006 letter decision. Mid-Century moved to be dismissed from the appeal based on the Department's order dismissing Mid-Century from the action.

[¶12.] Following oral arguments, the circuit court issued a letter decision affirming the Department's ruling that Bituminous is responsible for Baier's workers' compensation benefits, and finding that Baier is permanently and totally disabled. The court further ruled that Bituminous had timely appealed from the Department's June 7, 2006 decision and August 2, 2006 order. The court denied Mid-Century's motion to dismiss. Bituminous now appeals to this Court asserting that Baier did not meet his burden to show that Bituminous was liable under the last injurious exposure rule, and Baier failed to prove that he is permanently and

totally disabled. Baier submitted one issue on notice of review: whether Bituminous's appeal on compensability was timely.[1]

## Analysis and Decision

### I.

[¶13.]    Before we address the substantive issues, we must first resolve certain jurisdictional and procedural questions. Baier and Mid-Century contend that Bituminous's appeal to the circuit court, from the Department's June 7, 2006 decision and August 2, 2006 order, was untimely. Mid-Century further asserts that because Bituminous did not appeal the Department's September 28, 2006 order dismissing Mid-Century as a party, Bituminous is prohibited from claiming that Mid-Century is liable for Baier's benefits. Bituminous responds that neither order from the Department was final under SDCL 1-26-31.

[¶14.]    Under SDCL 1-26-30.2, any party may appeal to the circuit court "in a contested case from a final decision, ruling, or action of" the Department. The appealing party has thirty days from the Department's notice of a final decision to appeal. SDCL 1-26-31. Here, the question is whether the Department's August 2

---

1.    We examine this case on the following standard of review:

> In workers' compensation cases, our standard of review is controlled by SDCL 1-26-37. Witness credibility is a question of fact. *Kuhle v. Lecy Chiropractic,* 2006 SD 16, ¶15, 711 NW2d 244, 247 (citing *Enger v. FMC,* 1997 SD 70, ¶10, 565 NW2d 79, 83) (quoting *Tieszen v. John Morrell & Co.,* 528 NW2d 401, 403-04 (SD 1995)). When an issue is a question of fact, then the clearly erroneous standard applies to the agency's findings. *Id.* We will reverse only when we are firmly convinced a mistake has been made. *Id.* (citing *Gordon v. St. Mary's Healthcare Ctr.,* 2000 SD 130, ¶16, 617 NW2d 151, 156).

(continued . . .)

order was a final decision. A review of the order reveals that the Department issued a ruling on the issue of which insurer is responsible. But the issue of what benefits, if any, Baier was entitled to was yet to be determined. Indeed, the Department specifically retained jurisdiction to decide the issue of Baier's benefits. Because the August 2 order resolved only the issue of liability and retained jurisdiction to determine benefits, the August 2 order was not a final decision appealable under SDCL 1-26-30.2. *See* Herr v. Dakotah, Inc., 2000 SD 90, ¶24, 613 NW2d 549, 554 (citing Call v. Benevolent & Protective Order of Elks, 307 NW2d 138, 139 (SD 1981)) ("If Department's order continues jurisdiction over an award, it does not achieve finality."). To conclude otherwise would frustrate the goals of our workers' compensation laws, namely, to provide employees an expedient, fair, and efficient way to seek compensation for work-related injuries. Allowing piecemeal appeals would only extend the process, which in this case, has already lasted over four years.

[¶15.] Further, the Department's September 28, 2006 order dismissing Mid-Century was not a final order under SDCL 62-7-19 and SDCL 1-26-30.2. Under SDCL 15-6-54(b), "any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

_____

(. . . continued)
Vollmer v. Wal-Mart Store, Inc., 2007 SD 25, ¶12, 729 NW2d 377, 382.

*See also* SDCL 1-26-32.1 (the procedural rules of Title 15 apply to appeals under Chapter 1-26, "unless a different provision is specifically made by this chapter or by the statute allowing such appeal"). Because the order dismissing Mid-Century adjudicated the liability of fewer than all the parties and was subject to revision at any time before the final judgment adjudicating all the claims against all the parties in this action, the order dismissing Mid-Century was not a final order under SDCL 62-7-19 and SDCL 1-26-30.2.

[¶16.]     We next address a procedural question raised by Baier. He claims that because Bituminous failed to submit proposed findings of fact and conclusions of law before the Department's August 2 order, this Court can only review whether the findings of fact support the conclusions of law. Bituminous, on the other hand, insists that the issue of liability was submitted to the Department on summary judgment and proposed findings and conclusions were unnecessary.

[¶17.]     A review of the record shows that on December 27, 2005, Bituminous moved the Department for summary judgment on the issues of liability and apportionment. Yet, on January 10, 2006, the Department issued a letter to all parties indicating that the parties agreed to submit the issues of liability and apportionment on the record. There is no mention of summary judgment in this letter. Moreover, the Department's June 7 letter decision and August 2 order state nothing of summary judgment. Rather, the Department entered detailed factual findings by preponderance of the evidence and multiple conclusions of law. The Department further directed the parties to submit proposed findings of fact and

conclusions of law. Bituminous did not do so, even after the Department asked Bituminous if it intended to submit any proposals.

[¶18.]    The only suggestion in the record that the Department possibly considered the issues on summary judgment is the *circuit court's* letter decision declaring that the issues were submitted to the Department by way of Bituminous's motion for summary judgment. The circuit court further remarked that the Department "essentially denied summary judgment[.]" We are not bound by the circuit court's statements. Rather, we rely on the record, which does not support that the Department summarily ruled on the issues of liability and apportionment. Because Bituminous did not propose findings of fact and conclusions of law, our review is limited to whether the Department's findings of fact support its conclusions of law. *See* Canyon Lake Park, L.L.C. v. Loftus Dental, P.C., 2005 SD 82, ¶11, 700 NW2d 729, 733 (quoting Premier Bank, N.A. v. Mahoney, 520 NW2d 894, 895 (SD 1994) (quoting Huth v. Hoffman, 464 NW2d 637, 638 (SD 1991))).

## II.

[¶19.]    Bituminous alleges that the Department erred when it found Bituminous liable for Baier's benefits. An employee need not prove a specific trauma to receive workers' compensation, if the employee can "'prove a history of injury to the body that occurs in the normal course of employment.'" Horn v. Dakota Pork, 2006 SD 5, ¶16, 709 NW2d 38, 42 (quoting St. Luke's Midland Reg'l. Med. Ctr. v. Kennedy, 2002 SD 137, ¶11, 653 NW2d 880, 884). The employee must also prove that the employment-related activities were a major contributing cause of the complained condition. *See* SDCL 62-1-1(7)(a). Here, no party contests that

Baier's work activities were a major contributing cause of his hip disability. Rather, the dispute centers on whether the disability occurred before 2002, which was before Bituminous was the insurer for Kurtz. This question invokes the last injurious exposure rule:

> When a disability develops gradually, or when it comes as the result of a succession of accidents, the insurance carrier covering the risk at the time of the most recent injury or exposure bearing a causal relation to the disability is usually liable for the entire compensation.

Paulson v. Black Hills Packaging Co., 1996 SD 118, ¶10, 554 NW2d 194, 196 (quoting Novak v. C.J. Grossenburg and Son, 89 SD 308, 232 NW2d 463, 464-65 (1975) (quoting 3 Larson, Workmen's Compensation Law, § 95.00)); *see also* SDCL 62-1-18.

[¶20.]      Applying the last injurious exposure rule, the Department concluded that Baier's need for bilateral hip surgery was unrelated to his 1999 back injury, and that, based on the medical testimony, Baier did not suffer a specific injury to his hips, but rather suffered a degenerative condition that developed gradually. The Department found Bituminous liable for Baier's benefits because it concluded that Bituminous was on the risk when Baier was most recently exposed to his work environment, which was casually related to his disability.

[¶21.]      In reaching its decision, the Department made fifty-four findings of fact, all "established by a preponderance of the evidence[.]" The findings are based on deposition testimony from multiple doctors, Baier, and his wife, Baier's medical records, and the Department's hearing file. Specifically, the Department found that based on Dr. Harlow's deposition testimony, Baier suffered from end stage

degenerative arthritis in both hips, caused by Baier's strenuous work activities. Dr. Harlow considered the fact that Baier made complaints about his hips before 2004, but remarked that despite the complaints, he could not to a reasonable degree of probability pinpoint when the degenerative condition began. The Department also made findings with regard to Dr. Greg Reichhardt's testimony. Dr. Reichhardt gave a medical opinion based on his review of Baier's medical records and the depositions. Dr. Reichhardt performs no surgeries, but evaluates patients with muscle, bone, and joint problems. He opined that Baier's hip problems and need for surgery were likely caused by a combination of his work activities and individual genetics. He could not pinpoint when Baier's arthritis began, but expressed the view that it occurred through a gradual process, progressing over time.

[¶22.] Based on our review, the Department's findings of fact support its conclusions of law that Bituminous was the insurer at the time of Baier's most recent exposure bearing a causal relationship to his disability. Nonetheless, Bituminous insists that the Department's findings of fact show that Baier's hip disability was present before Bituminous was Kurtz's insurer. It relies on the following findings:

> 35. *From 2000 to 2004*, [Baier's] hips gradually started to bother him.
>
> 36. [Baier] did not suffer a specific injury to his hips. Rather, the discomfort in both of [Baier's] *hips gradually increased to the point where in 2002*, [Baier] specifically began to notice that he was losing motion and flexibility from his hips down to his legs. [Baier] testified, "[i]t seems like it was gradual and, you know, from 2002 to 2004 is when I really felt like I was becoming disabled."

(Emphasis added.). Bituminous argues that the first time the appearance of symptoms can be identified is when a disability arises for the purpose of assigning liability to an insurer. Here, Bituminous claims that this occurred at least in 2000.

[¶23.]    Which insurer is responsible for a claimant's workers' compensation benefits for a gradually progressing disability does not entail a dissection of the claimant's medical records to find one statement or notation that a symptom of the disability was present. Rather, when a disability develops gradually, "the insurance carrier covering the risk at the time of the most recent . . . exposure bearing a causal relation to the disability is usually liable for the entire compensation." *Paulson*, 1996 SD 118, ¶10, 554 NW2d at 196 (citations omitted). Here, no doctor disputed that Baier's work activities caused his degenerative condition, including his work activities after 2002. Bituminous was covering the risk when Baier was most recently exposed to his injurious work environment causally related to his disability; therefore, Bituminous is responsible.

### III.

[¶24.]    Bituminous next alleges that Baier failed to prove his entitlement to permanent total disability benefits. Specifically, Bituminous claims that Baier produced insufficient evidence of a reasonable, good faith work search, failed to meet his burden that he could not be retrained, and did not prove that his physical condition prevented him from securing anything more than sporadic employment. According to Bituminous, Dr. Harlow's physical restrictions on Baier were merely recommendations: Baier could return to construction work. Bituminous argues that because Baier would inevitably need a second hip replacement surgery, despite

his level of activity, Baier's hip condition does not make it impossible for him to return to work.

[¶25.]    "An employee is permanently totally disabled if the employee's physical condition, in combination with the employee's age, training, and experience and the type of work available in the employee's community, cause the employee to be unable to secure anything more than sporadic employment resulting in an insubstantial income." SDCL 62-4-53. The burden is on the employee "to make a prima facie showing of permanent total disability." *Id.*

> First, if the claimant is obviously unemployable, then the burden of production shifts to the employer to show that some suitable employment is actually available in claimant's community for persons with claimant's limitations. Obvious unemployability may be shown by: (1) showing that his physical condition, coupled with his education, training, and age make it obvious that he is in the odd-lot total disability category, or (2) persuading the trier of fact that he is in fact in the kind of continuous, severe and debilitating pain which he claims.

> Second, if the claimant's medical impairment is so limited or specialized in nature that he is not obviously unemployable or relegated to the odd-lot category then the burden remains with the claimant to demonstrate the unavailability of suitable employment by showing that he has unsuccessfully made reasonable efforts to find work.

Fair v. Nash Finch Co., 2007 SD 16, ¶19, 728 NW2d 623, 632-33 (quoting Kassube v. Dakota Logging, 2005 SD 102, ¶34, 705 NW2d 461, 467 (internal citations omitted)).

[¶26.]    Here, the Department found that Baier is "obviously unemployable." It relied on the testimony of Dr. Harlow, who it found credible, that Baier has permanent physical restrictions that prohibit him from returning to heavy-duty

construction work. Moreover, the Department accepted Dr. Harlow's recommendation that Baier refrain from engaging in anything but sedentary to light manual labor. The Department further considered Baier's age (forty-eight), along with the fact that he had not completed formal education or training, and that he had only worked in the construction industry doing physical labor, which he is now prohibited from continuing.

[¶27.] For its decision that Baier was unemployable, the Department relied on the testimony of Dr. Lynn Meiners, who performed a vocational assessment by reviewing Baier's medical records, meeting with him, and reviewing other relevant information. Dr. Meiners concluded that Baier's physical restrictions presented a significant barrier to his obtaining employment at the level of his workers' compensation rate. Because of Baier's background in physically demanding construction work and now being limited to light-duty, sedentary work, Dr. Meiners was unable to identify any jobs within Baier's restrictions that paid the level of Baier's workers' compensation rate.

[¶28.] "Whether a claimant makes a prima facie case to establish odd-lot total disability inclusion is a question of fact." *Vollmer*, 2007 SD 25, ¶12, 729 NW2d at 382 (citing Lagge v. Corsica Co-op., 2004 SD 32, ¶14, 677 NW2d 569, 573 (citation omitted)). We give great weight to the findings and inferences made by the Department and will only overrule the Department's factual findings if they are clearly erroneous. Spitzack v. Berg Corp., 532 NW2d 72, 75 (SD 1995) (citations omitted). Based on our review of the record, we cannot conclude that the Department clearly erred when it found Baier obviously unemployable. Dr. Harlow

imposed permanent physical restrictions on Baier's activities, prohibiting him from returning to heavy-duty construction work. Heavy-duty construction work, however, is all Baier has done for his career. Dr. Meiners could not identify any employment opportunities for Baier within his restrictions at his workers' compensation rate.

[¶29.] Because Baier made a prima facie showing that he is permanently and totally disabled, the burden shifted to the employer "to show that some form of suitable work is regularly and continuously available to the employee in the community." SDCL 62-4-53. "The employer may meet this burden by showing that a position is available which is not sporadic employment resulting in an insubstantial income as defined in subdivision 62-4-52(2)." *Id.* Sporadic employment is "employment that does not offer an employee the opportunity to work either full-time or part-time and pay wages equivalent to, or greater than, the workers' compensation benefit rate applicable to the employee at the time of the employee's injury." SDCL 62-4-52(2).

[¶30.] At the time of the hearing, Baier was employed by Carousel Casino as a casino host earning $7.50 per hour. This position was considered sporadic employment because it does not pay at the level of Baier's workers' compensation rate. *See* SDCL 62-4-52(2). Bituminous claims that Baier turned down a position as a quality controller at $16 per hour for 565 days. The job was originally advertised in the newspaper requiring applicants to have a degree in civil engineering or construction management. According to Kurtz, however, the requirements changed and a degree was no longer required. Kurtz claimed that the

job requirements were within Baier's physical restrictions. Baier turned down the job offer because he does not have any degree, does not have experience with blueprints and specifications, and lacks specific computer skills. Baier was also concerned with the physical demands of the job.

[¶31.]    Bituminous argues that the position offered by Kurtz to Baier satisfied its burden to show that a position was available at a level greater than Baier's workers' compensation rate. Bituminous claims Baier testified that he could perform the job as indicated in the job description. Although Baier did state that he could perform the job as *described*, the actual job included tasks beyond Baier's physical restrictions. Moreover, the Department rejected the argument that this position satisfied the burden because it was only temporary. There is no dispute that the position would last only 565 days.

[¶32.]    Nonetheless, Bituminous claims that Baier unreasonably declined a valid job offer and voluntarily limited his income. Bituminous relies on its vocational expert, Gerry Gravatt, who said that quality control jobs come available continuously in the community through the government and state. The Department, however, specifically remarked that Baier "demonstrated that he made reasonable efforts to find employment, but was unsuccessful." Based on our review of the record, the Department did not err when it concluded that the employer failed to show that some form of suitable work is regularly and continuously available.

[¶33.]    With only sporadic employment available, the issue became whether Baier could be retrained or rehabilitated to become employable. *See Spitzack*, 532

NW2d at 76. The burden is on the employer to establish that retraining is reasonable. *See id.* Here, Gerry Gravatt reviewed Dr. Harlow's deposition testimony, Baier's deposition, and medical information. He also met with Baier. Gravatt testified that he identified several jobs as a result of his market search that were within Baier's physical restrictions at his workers' compensation rate. However, upon further questioning, Gravatt testified that some of the jobs were not currently available, but might be in the spring, and that these companies would be interested in hiring Baier. Gravatt also opined that Baier could be self employed as a carpenter and that there is regular and continuous carpentry work available in Rapid City. Gravatt did not specifically research the possibility of retraining or rehabilitation for Baier, but thought nonetheless that Baier would benefit from vocational retraining.

[¶34.]     Dr. Meiners testified on behalf of Baier. She believed that Baier would not benefit from vocational rehabilitation or by returning to school to complete a teaching degree. She considered his age and his previous academic performance, and concluded that even if Baier obtained a teaching degree, he would face a barrier of low demand. She also did not believe that Western Dakota Technical Institute offered Baier any feasible program, as he did not have the aptitude for certain programs or would not earn beyond an entry level wage, a wage below his workers' compensation rate. In her market search, Dr. Meiners was unable to identify any job within Baier's restrictions that paid at least his workers' compensation rate. Baier's medical restrictions, Dr. Meiners remarked, imposed a barrier to finding

Baier employment. Moreover, Baier's skill level is in construction work, which has "negligible transferable skills[.]"

[¶35.] The Department found Dr. Meiner's opinions to be "well-founded and credible." In regard to Gravatt's testimony, the Department specifically rejected it because it was inconsistent and contrary to the credible evidence that there are no jobs available for Baier within his restrictions at his workers' compensation rate. We give great deference to the Department's credibility determinations. Dr. Meiners and Gravatt testified live, and therefore, we will not disturb the Department's findings and inferences unless we are left with a definite and firm conviction that a mistake has been made. *See Spitzack*, 532 NW2d at 75.

[¶36.] Affirmed.

[¶37.] GILBERTSON, Chief Justice, and ZINTER and MEIERHENRY, Justices, and SABERS, Retired Justice, concur.